TUCKER ELLIS LLP
Michael J. Ruttinger (admitted *pro hac vice*)
michael.ruttinger@tuckerellis.com
Ethan W. Weber (admitted *pro hac vice*)
ethan.weber@tuckerellis.com
950 Main Avenue
Suite 1100
Cleveland, OH 44113
Telephone:     216.592.5000
Facsimile:     216.592.5009

TUCKER ELLIS LLP
Bart L. Kessel SBN 125080
bart.kessel@tuckerellis.com
Anna-Sophie Tirre SBN 336835
anna-sophie.tirre@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071
Telephone:     213.430.3400
Facsimile:     213.430.3409

Attorneys for Defendant
THE J.M. SMUCKER COMPANY

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ROBIN HUMPHREY, individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>THE J.M. SMUCKER COMPANY<br><br>Defendant. | Case No. 3:22-cv-06913-WHO<br><br>**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT UNDER FED. R. CIV. P. 12(B)(1) AND 12(B)(6)**<br><br>Date:     May 17, 2023<br>Time:    2:00 p.m.<br><br>Judge: Hon. William H. Orrick |

TO PLAINTIFF AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on May 17, 2023 at 2:00 p.m., or as soon thereafter as the matter may be heard in the above-titled Court, located at 450 Golden Gate Avenue, San Francisco, California, before the Honorable William H. Orrick, Defendant The J.M. Smucker Company ("Smucker") will, and hereby does, respectfully move the Court for an order dismissing Plaintiff's First Amended Class Action Complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Plaintiff's First Amended Class Action Complaint should be dismissed because Plaintiff fails to allege a cognizable economic injury, and thus there is no case or controversy over which this Court may exercise subject-matter jurisdiction. Plaintiff further lacks standing to represent the out-of-state members of her alleged consumer fraud multi-state subclass based on the laws of other states. In the alternative, Plaintiff has failed to allege actionable misrepresentations and failed to allege essential elements of several of her California statutory and common-law claims. This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below, all documents in the Court's file, and such other written and oral argument as may be presented to the Court.

DATED: March 31, 2023                    TUCKER ELLIS LLP


By:   */s/ Michael J. Ruttinger*
      Michael J. Ruttinger
      Attorneys for Defendant
      The J.M. Smucker Company

i
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT UNDER FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

Case No. 3:22-cv-06913-WHO

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................................................... iii

STATEMENT OF ISSUES TO BE DECIDED ................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................................1

I. INTRODUCTION ...............................................................................................................1

II. BACKGROUND .................................................................................................................2

    A. Plaintiff alleges that the pet-food products at issue are unsafe and worthless because they contain TiO2 and PFAS *by design*. ..............................2

    B. Plaintiff predicates her false advertising allegations on claims that Smucker failed to disclose health risks associated with TiO2 and PFAS and instead misleadingly advertised the Products. ............................................3

    C. Plaintiff, a California resident, seeks to represent not only California consumers, but also a multi-state subclass consisting of class members who *also* purchased the Products under the consumer fraud laws of nine other states. ....................................................................................................5

III. LAW AND ARGUMENT ...................................................................................................5

    A. Alleged economic loss, alone, is not enough to establish an "injury in fact" for Article III standing where the plaintiff's false advertising claims are based on an alleged defect rendering a consumer product unsafe. ............6

    B. Plaintiff's consumer fraud multi-state subclass must be dismissed because Plaintiff lacks standing to represent persons who purchased the Products outside of California. ..................................................................9

    C. Several of Plaintiff's California and common-law claims fail for other reasons. ...............................................................................................12

        1. The express representations Plaintiff identifies are not actionable because they are either truthful statements or subjective opinions about product attributes. ..............................................................12

        2. Plaintiff has failed to allege facts sufficient to state a claim for negligent misrepresentation (Count VII). ............................................13

IV. CONCLUSION..................................................................................................................13

ii
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT UNDER FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

Case No. 3:22-cv-06913-WHO

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*818Computer, Inc. v. Sentinel Ins. Co., Ltd.*,
  No. CV 19-0009-MWF (PLAx), 2019 WL 698102 (C.D. Cal. Feb. 19, 2019) .................................. 13

*Barnes v. Campbell Soup Co.*,
  No. C 12-05185 JSW, 2013 WL 5530017 (N.D. Cal. July 25, 2013) ...................................... 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................ 6

*Bock v. Hansen*,
  225 Cal.App.4th 215 (Cal. Ct. App. 2014) ............................................................................ 13

*Boysen v. Walgreen Co.*,
  No. C-11-06262 SI, 2012 WL 2953069 (N.D. Cal. July 19, 2012) ............................... 7, 8, 9

*Buus v. WAMU Pension Plan*,
  251 F.R.D. 578 (W.D. Wash. 2008) ..................................................................................... 10

*Cahen v. Toyota Motor Corp.*,
  147 F. Supp. 3d 955 (N.D. Cal. 2015) ........................................................................ 2, 7, 8, 9

*Corcoran v. CVS Health Corp.*,
  169 F. Supp. 3d 970 (N.D. Cal. 2016) .................................................................................. 11

*Cover v. Windsor Surry Co.*,
  No. 14-cv-05262-WHO, 2016 WL 520991 (N.D. Cal. Feb. 10, 2016). ............................... 11

*Fraker v. KFC Corp.*,
  No. 06-CV-01284, 2007 WL 1296571 (S.D. Cal. Apr. 30, 2007) ........................................ 12

*Frezza v. Google, Inc.*,
  No. 5:12-CV-00237-RMW, 2013 WL 1736788 (N.D. Cal. Apr. 22, 2013) ......................... 11

*Gagetta v. Walmart, Inc.*,
  --- F. Supp. 3d ---, 2022 WL 17812924 (N.D. Cal. Dec. 19, 2022) ................................... 8, 9

*Herrington v. Johnson & Johnson Consumer Companies, Inc.*,
  No. C 09-1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ..................................... 8, 9

*In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*,
  No. 09 MDL 2007-GW(PJWx), 2009 WL 9502003 (C.D. Cal. July 6, 2009) .................... 11

*In re Beech-Nut Nutrition Co. Baby Food Litig.*,

iii
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT UNDER FED. R. CIV. P.
12(B)(1) AND 12(B)(6)

Case No. 3:22-cv-06913-WHO

--- F. Supp. 3d ---, 2023 WL 350818 (N.D.N.Y. Jan. 19, 2023) .......................................................... 6

*In re Carrier IQ, Inc.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015) ................................................................................. 11

*In re Ditropan XL Antitrust Litig.*,
   529 F. Supp. 2d 1098 (N.D. Cal. 2007) ............................................................................... 10

*In re Toyota Motor Corp. Unintended Acceleration Litig.*,
   790 F. Supp. 2d 1152 (C.D. Cal. 2011) ................................................................................. 7

*Johnson v. Nissan North Am., Inc.*,
   272 F. Supp. 3d 1168 (N.D. Cal. 2017) ......................................................................... 10, 11

*Lewis v. Casey*,
   518 U.S. 343 (1996) ............................................................................................................ 10

*Mazza v. American Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ............................................................................................... 11

*McDonough v. Toys 'R' Us, Inc.*,
   638 F. Supp.2d 461 (E.D. Pa. 2009) .................................................................................... 10

*McKinney v. Google, Inc.*,
   No. 10-cv-01177, 2011 WL 3862120 (N.D. Cal. Aug. 30, 2011) ....................................... 12

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010) .............................................................................................................. 6

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) ................................................................................................ 11

*Pardini v. Unilever U.S., Inc.*,
   961 F. Supp. 2d 1048 (N.D. Cal. 2013) ............................................................................... 10

*Parent v. MillerCoors LLC*,
   No. 15-cv-1204, 2015 WL 6455752 (S.D. Cal. Oct. 26, 2015) ........................................... 12

*Prado-Steiman v. Bush*,
   221 F.3d 1266 (11th Cir. 2000) ........................................................................................... 10

*Sosna v. Iowa*,
   419 U.S. 393 (1975) ............................................................................................................ 10

*Susan J. v. Riley*,
   254 F.R.D. 439 (M.D. Ala. 2008) ........................................................................................ 10

*Vitt v. Apple Computer, Inc.*,

iv

MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT UNDER FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

Case No. 3:22-cv-06913-WHO

469 F. App'x 605 (9th Cir. 2012) .................................................................................................. 12

*Zeiger v. Wellpet LLC*,
   304 F. Supp. 3d 837 (N.D. Cal. 2018) ...................................................................................... 2, 11

**STATEMENT OF ISSUES TO BE DECIDED**

1. Does Plaintiff sufficiently allege a cognizable "economic injury" for purposes of establishing standing?

2. Does Plaintiff have standing to represent members of the putative consumer fraud multi-state subclass, who allege claims based on the violation of law of states other than California?

3. Does Plaintiff allege actionable misrepresentations sufficient to support her claims under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* (Count I), California's Consumer Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750, *et seq.* (Count II), and California's False Advertising Law (Count III)?

4. Does Plaintiff allege facts sufficient to state a claim for negligent misrepresentation (Count IX)?

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

This proposed class action tests the limits of how far a plaintiff may fall back on "economic injury" allegations to meet her burden of pleading facts sufficient to show standing. Plaintiff Robin Humphrey characterizes this as a conventional false-advertising case in hope of relying on the relatively low bar for alleging an economic injury to establish standing, but her allegations tell a different story. She claims that the products at issue—three pet-food brands sold by the J.M. Smucker Company ("Smucker")—are not "safe for animal consumption," and thus "worthless," because they contain as a *listed ingredient* an FDA-regulated additive—Titanium Dioxide (TiO2)—that allegedly may have toxic properties. She couples this with an allegation that Smucker—like many other manufacturers of both pet- and human-food products, uses packaging materials designed with synthetic per- and polyfluoroalkyl substances ("PFAS"), which have also been the subject of recent scrutiny by some researchers and consumer health advocates. The upshot of her theory is that Smucker owes her, and every other class member, a refund of "the full purchase price of the Products," no matter whether any adverse health consequences materialized. *See* First Amended Class Action Complaint ("FAC"), Doc. 27 at ¶ 51.

In short, Plaintiff's lawsuit is premised on a set of claims—that the pet foods at issue are *defective* both in how they are designed and labeled, and thus unsafe for use—for which conclusory allegations of an economic injury are not enough. When economic loss "is predicated solely on how a product functions, and the product has not malfunctioned," this Court and others in the district require a plaintiff to allege "something more" than simply overpaying for a "defective" product. *See, e.g.*, *Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 970 (N.D. Cal. 2015) (Orrick, J.). Here, there is no allegation that the products "malfunctioned" and Plaintiff has not alleged and does not attempt to allege a physical injury. Consequently, she does not—and cannot—allege the "something more" needed to plausibly allege an economic injury sufficient to establish standing. All of her claims should therefore be dismissed under Rule 12(b)(1) because without standing to sue, this Court lacks subject-matter jurisdiction.

Further, even if Plaintiff had standing to sue on her own behalf, she cannot represent the members of her alleged consumer fraud multi-state subclass (Count X) because she lacks standing to represent purchasers of the Products for claims asserted under other states' laws. *See Zeiger v. Wellpet LLC*, 304 F. Supp. 3d 837 (N.D. Cal. 2018) (Orrick, J.). Dismissing the multi-state subclass claim at the pleading stage is therefore appropriate.

Dismissal of Plaintiff's claims is further appropriate under Rule 12(b)(6) because Plaintiff fails to state a claim upon which relief can be granted. Specifically, the representations identified in the Complaint are not "specific and measurable" statements, and therefore allegations that they are false cannot support Plaintiff's California statutory and common-law claims. Her claim asserted under California law for negligent misrepresentation (Count VIII) also lacks factual allegations sufficient to support its prerequisite elements of either cause of action.

## II.     BACKGROUND

### A.     Plaintiff alleges that the pet-food products at issue are unsafe and worthless because they contain TiO2 and PFAS *by design*.

Plaintiff Robin Humphrey alleges that three different pet-food brands manufactured by Smucker are unsafe for animal consumption because the products contain TiO2 and PFAS, each of which is allegedly toxic. *See* FAC, Doc. 27 at ¶¶ 1-2, 5, 8. Specifically, she alleges that all flavors of three different

brands of pet food manufactured by Smucker—"9 Lives," "Kibbles 'n Bits," and "Meow Mix" (collectively, the "Products")—are "not healthful," "pose a significant health risk," and are therefore "worthless" due to the presence of TiO2 among the listed product ingredients and because the Products' packaging allegedly contains PFAS. *See id.* ¶¶ 15, 51.

While Plaintiff takes the same approach to addressing both TiO2 and PFAS as the basis for her lawsuit, the facts alleged as to these two substances diverge. For TiO2, Plaintiff alleges that it is a *listed ingredient*—a coloring agent—for each of the Products. *See id.* at ¶ 13 (alleging that Defendant lists TiO2 "on the ingredient list . . . on the back of the Products"). It is, in other words, an intended part of the product design, *not* an inadvertent contaminant. The story is different for PFAS, a category of synthetic chemicals that have spawned considerable litigation in recent years. Plaintiff alleges that testing conducted by the "Environmental Working Group" indicated that two of the Products—Meow Mix Tender Centers and Kibbles 'n Bits Bacon & Steak—contain certain PFAS chemicals and organic fluorine levels "indicative of intentional use of PFAS" in the Products' packaging. *Id.* at ¶¶ 34-36, 38. She admits that none of the other products at issue have been tested, but she assumes that "[b]ecause the packaging for the Products is comprised of similar and unaltered components . . . it is highly likely that the packaging of each of Defendant's Products are also comprised of certain named PFAS." *Id.* at ¶ 35 n.5. The bottom line, however, is that Plaintiff believes *any* use of PFAS in packaging renders the Products unsafe because "[r]esearchers have established with certainty that chemicals migrate from food contact articles onto food." *Id.* at ¶ 40. Thus, Plaintiff alleges Smucker "endangered consumers' pets, exposing them to TiO2 and PFAS, which Defendant knows carries significant health concerns." *Id.* at ¶ 44.

### B.  Plaintiff predicates her false advertising allegations on claims that Smucker failed to disclose health risks associated with TiO2 and PFAS and instead misleadingly advertised the Products.

Although allegations about TiO2 and PFAS are at the core of Plaintiff's claims, she has styled her case as a false advertising lawsuit about a variety of qualitative value statements that have little to do with her TiO2- and PFAS-focused allegations. Specifically, she alleges that because Smucker is aware of the presence of TiO2 and PFAS and the corresponding health risks, it misleads consumers when it makes the following representations:

3

MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT UNDER FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

Case No. 3:22-cv-06913-WHO

> On the 9Lives cat food packaging, for example, Defendant represents that it has been **"caring for cats since 1959."** Specifically, Defendant represents that the Products provide **"100% Complete & Balanced For Adult Maintenance"** and **"100% Complete and Balanced Nutrition for Adult Cats."** Defendant complements these statements with **"Helps Support a Healthy Immune System," "Helps Support Healthy Weight & Metabolism," "Helps Maintain Weight & Digestion," "Blend of Essential Vitamins and Minerals,"** and **"High Quality Ingredients & Natural Fiber."** Defendant further represents that the pet food will build **"strong muscles,"** enable **"healthy heart and vision,"** and produce **"healthy skin & coat."**

*Id.* at ¶ 45 (emphases added).

> On the Kibbles 'n Bits dog food packaging, Defendant similarly represents that the food is healthful for pets by stating the Products are **"100% Complete and Balanced Nutrition for Adult Dogs."** Defendant further represents the Product's healthful properties by stating that there is **"balanced nourishment in every bite!"**

*Id.* at ¶ 46 (emphases added).

> On the Meow Mix cat food packaging, Defendant also represents the Products as healthful by stating the pet food is **"100% complete and balanced nutrition for adult cats"** and intended for **"indoor health."** Defendant further represents that the Products have **"all essential vitamins & minerals," "antioxidants [that] help support a long, healthy life,"** and the food **"helps maintain healthy weight."**

*Id.* at ¶ 47 (emphases added). Claiming that the presence of TiO2 and PFAS renders each of these statements untrue, Plaintiff alleges that she "and the Class were injured by the full purchase price of the Products because the Products are worthless, as they are marketed as healthful for animal consumption when they are not." *Id.* at ¶ 51. Moreover, Plaintiff alleges that "because these facts relate to a critical safety-related deficiency in the Products, Defendant was under a continuous duty to disclose to Plaintiff and Class Members . . . that the Products contained, or risked containing, substances known to have adverse health effects." *Id.* at ¶ 53.

**C.  Plaintiff, a California resident, seeks to represent not only California consumers, but also a multi-state subclass consisting of class members who *also* purchased the Products under the consumer fraud laws of nine other states.**

In this First Amended Complaint, Plaintiff retreats from her initial allegations of a nationwide class. She now seeks to represent "all persons in the State of California" who purchased any of the Products during the class period, as well as a "subclass" of all "Class Members who . . . purchased any of the Products at issue in California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, or Washington." *Id.* at ¶¶ 62-62(a). She alleges three California statutory claims on her own behalf and that of the Class, including claims under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* (Count I), California's Consumer Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750, *et seq.* (Count II), and California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.* (Count III). She also alleges causes of action for Fraud (Count IV), Fraudulent Inducement (Count V), Fraudulent Concealment or Omission (Count VI), Fraudulent Misrepresentation (Count VII), Negligent Misrepresentation (Count VIII), and Quasi-Contract/Unjust Enrichment (Count IX). *See id.* at ¶¶ 73-165. Finally, on behalf of the subclass, she alleges a claim for "Violation of State Consumer Fraud Acts," asserting that Smucker has engaged in intentional deceptive conduct in "violation of the Consumer Fraud Acts of the states in the Consumer Fraud Multi-State Subclass." *Id.* at ¶¶ 166-174.

### III.  LAW AND ARGUMENT

Plaintiff's First Amended Class Action Complaint fails as a matter of law for several reasons. First, Plaintiff has not alleged any injury sufficient to confer standing for her claim for damages or injunctive relief, thus requiring dismissal of the Complaint under Federal Rule of Civil Procedure 12(b)(1). Second, Plaintiff's attempt to expand the putative class to purchasers of the Products outside of California fails because Plaintiff lacks standing to represent consumers whose claims arise under the consumer fraud acts of the nine other states identified as part of the Consumer Fraud Multi-State Subclass. In addition, Plaintiff's various claims under California and common law fail to state a claim for additional reasons. In short, Plaintiff fails to allege any sufficiently plausible claim, requiring dismissal of her Class Action

Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6). *See generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### A. Alleged economic loss, alone, is not enough to establish an "injury in fact" for Article III standing where the plaintiff's false advertising claims are based on an alleged defect rendering a consumer product unsafe.

The key question for purposes of establishing standing under Article III of the United States Constitution is whether Plaintiff's allegations are enough to show an "injury in fact" that is "concrete, particularized, and actual or imminent." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). Plaintiff seeks to discharge her burden of alleging facts to establish standing by claiming: "she suffered, and continues to suffer, economic injuries" and lost the benefit of her bargain "in that she would not have purchased the Products or would not have purchased them on the same terms, if the true facts about their contents had been known." FAC. at ¶ 19. She does not, however, allege that either she or her pets were harmed in any way by using the Products, or allege any future risk of physical harm from having done so. Her theory, then, is *solely* one of economic loss.

The problem with Plaintiff's attempt to rely on alleged economic loss to prove standing is that economic loss, alone, does not suffice in a case challenging the safety of a consumer product. All of Plaintiff's claims turn on her assumption that the Products are necessarily unsafe, that selling them was negligent, and that describing them as safe was misleading—that is, that they are *defectively designed and labeled*. Put simply, Plaintiff's Complaint tries to dress a no-injury product liability lawsuit in the clothes of a consumer false advertising case, even though her allegations unequivocally challenge the Products' alleged underlying toxicity, and thus their safety for *any* purpose. *See, e.g.*, *In re Beech-Nut Nutrition Co. Baby Food Litig.*, --- F. Supp. 3d ---, 2023 WL 350818 (N.D.N.Y. Jan. 19, 2023) (dismissing plaintiff's claims styled as "a 'garden variety' false advertising case," noting that plaintiffs "repeatedly assert that Beech-Nut's products are 'unsafe' to consume and that it is the products' underlying toxicity, not the label statements themselves, that cause any alleged injuries."). Plaintiff does not contest that she *used* the Products, and that they *worked* for her (*i.e.*, her pets were fed), and thus she has only been deprived of the benefit of her bargain if the Products she purchased malfunction, for example by injuring her pets at a

later date. Otherwise, the statements she currently challenges as "misleading" will have proven true for her.

This Court dealt with a similar situation in *Cahen v. Toyota Motor Corporation*, 147 F. Supp. 3d 955 (N.D. Cal. 2015), where it considered plaintiffs' attempts to allege a class action against Toyota, Ford, and General Motors based on alleged computer security vulnerabilities. There too, the plaintiffs sought to premise class claims on a consumer false-advertising theory (including similar claims under the UCL, CLRA, and FAL), alleging that the auto manufacturers misleadingly marketed their vehicles as safe while knowing about security risks that would expose consumers' vehicles to potential computer hacking in the future. *See id.* at 958-59. In *Cahen*, as it should here, this Court treated Plaintiffs' allegations not as traditional false advertising claims, but claims about an "alleged product defect." *Id.* at 967.

Importantly, this Court in *Cahen* set forth a standard for evaluating plaintiffs' claims in similar litigation where the plaintiff claims economic loss based on the risk of injury from a product defect. Citing to an MDL opinion issued in the *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices & Products Liability Litigation*, this Court observed that "[w]hen economic loss is predicated solely on how a product functions, and the product has not malfunctioned, the Court agrees that something more is required than simply alleging an overpayment for a 'defective' product." *Cahen*, 147 F. Supp. 3d at 970 (quoting *In re Toyota Motor Corp. Unintended Acceleration Litig.*, 790 F. Supp. 2d 1152, 1166 n.11 (C.D. Cal. 2011)).

This Court's decision in *Cahen* aligns it with others within the District, which have held that "conclusory allegations of economic loss stemming from a speculative future risk of harm cannot establish Article III standing unless plaintiffs plead 'something more.'" *Id.*

For example, in *Boysen v. Walgreen Co.*, No. C-11-06262 SI, 2012 WL 2953069, at *7 (N.D. Cal. July 19, 2012), the court found that economic injury cannot establish standing where "plaintiffs did not plead a distinct risk of harm from a defect in defendants' products that would make such an economic injury cognizable." In *Boysen*, the plaintiff alleged that the defendant's failure to disclose the presence of arsenic and lead in its juice products made its marketing claims that "the products are healthy and safe" misleading. *Id.* at *1. The court, dismissing the complaint for lack of Article III standing, held that the

plaintiff, who alleged no physical injury, also failed to allege *economic* injury because he did not sufficiently allege that "the juices . . . were unfit for their intended use, i.e. consumption, and therefore has not demonstrated he has 'lost money or property' sufficient to establish injury." *Id.* at *6. In other words, as this Court explained in *Boysen*, "an economic injury that rests on the risk presented by an underlying product defect fails to establish injury if the underlying risk is itself speculative." *Cahen*, 147 F. Supp. 3d at 970.

Judge Wilken's decision in *Herrington v. Johnson & Johnson Consumer Companies, Inc.*, No. C 09-1597 CW, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) directs the same result. In *Herrington*, the plaintiffs filed a class action including a nationwide class, a California sub-class asserting UCL, CLRA, and FAL claims, and a panoply of misrepresentation, fraud, and unjust enrichment claims, all based on allegations that the defendants sold children's bath products without disclosing that the products contain probable carcinogens and unsafe ingredients. *Id.* at *1. Taking up the economic-injury theory of standing, Judge Wilken rejected the plaintiffs' argument that "they experienced an economic injury, in that they unknowingly purchased products containing potential carcinogens, and that 'they would have never purchased these products had they known of the presence of these contaminants.'" *Id.* at *4. Specifically, the court concluded that the plaintiffs lacked standing because they "do not plead a distinct risk of harm from a defect in Defendants' products that would make such an economic injury cognizable." *Id.* The plaintiffs' theory of economic injury in *Herrington* is indistinguishable from the theory put forth by Plaintiff's Complaint.

Although this Court declined to apply the *Boysen* and *Herrington* holdings to its recent decision in *Gagetta v. Walmart, Inc.*, --- F. Supp. 3d ---, 2022 WL 17812924 (N.D. Cal. Dec. 19, 2022), the facts alleged in this matter make it more like *Boysen* and *Herrington* than *Gagetta*. In *Gagetta*, the plaintiff pursued a different theory: that the products at issue, herbs and spices sold by Walmart, were unsafe because they have a *contamination risk* in that they may contain heavy metals rendering the products "unsafe for human consumption." 2022 WL 17812924 at *1. Plaintiffs did not argue that Walmart *intended* the use of heavy metals as part of the products' design; on the contrary, this Court acknowledged Walmart's defense was that "'these elements in the nation's food supply are natural and cannot be

8
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT UNDER FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

Case No. 3:22-cv-06913-WHO

avoided.'" *Id.* at *5. Contrast that aspect of *Gagetta* with the fact that the FDA *does* regulate, and under some conditions *permits*, the use of TiO2 as an additive in both human and pet foods. *See* 21 C.F.R. § 73.575 (detailing specifications, uses, restrictions, and labeling requirements for titanium dioxide).[1] *Gagetta* therefore did not pose the same design- and labeling-defect allegations common to this matter, *Boysen*, and *Herrington*. For that reason alone, the plaintiffs in *Gagetta* did not need to plead the "something more" than economic injury that is required when a plaintiff alleges that an intended feature of a product's design or packaging makes it unsafe for use, period.

The only material difference between the claims made by Plaintiff and those in *Cahen*, *Boysen* and *Herrington* is that Plaintiff does not go through the empty routine of alleging an injury in fact in the form of "risk of future physical harm"—a theory on which the plaintiffs in the other three cases all tried and lost. The upshot of Plaintiff's claims is the same—that she experienced an "economic loss" even though the Products she purchased worked for her because there is a future, but unmaterialized, risk that a product defect could one day harm her, and therefore she was misled by labeling and advertising suggesting that the product is safe. This is not addition by subtraction. Just because Plaintiff did not *try* to allege a future risk of injury does not make her economic-loss argument subject to a lesser standard.

**B.     Plaintiff's consumer fraud multi-state subclass must be dismissed because Plaintiff lacks standing to represent persons who purchased the Products outside of California.**

Setting aside the issue of Plaintiff's *personal* standing, this Court should also dismiss Plaintiff's claims made on behalf of a consumer fraud multi-state subclass because she lacks standing to represent consumers of the Products who claim to have been injured by violations of the consumer protection laws of States other than California. Article III's case or controversy requirement, which drives the standing

---

[1] Indeed, at least one of the products referred to in Plaintiff's Complaint—the 9Lives Plus Care product, *see* FAC at ¶ 1 n.1—is subject to FDA pre-market approval requirements, including pre-approval of its labeling, which means that any claims critical of its design or labeling should be dismissed as preempted. *See, e.g.*, *Barnes v. Campbell Soup Co.*, No. C 12-05185 JSW, 2013 WL 5530017 (N.D. Cal. July 25, 2013). To the extent any of Plaintiff's claims survive the motion-to-dismiss stage, Smucker anticipates preserving this preemption defense and asserting it based on the approval record of the 9Lives Plus Care product at an appropriate time.

analysis, requires named plaintiffs to prove that they *personally* have been injured, "not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Lewis v. Casey*, 518 U.S. 343, 357 (1996).

At least one plaintiff must have standing with respect to each claim made in the case. *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007). This rule extends with equal force to alleged classes and subclasses. *See, e.g.*, *McDonough v. Toys 'R' Us, Inc.*, 638 F. Supp.2d 461, 473 (E.D. Pa. 2009) (citing *Sosna v. Iowa*, 419 U.S. 393, 403 (1975)); *Buus v. WAMU Pension Plan*, 251 F.R.D. 578, 584 (W.D. Wash. 2008) (noting that there must be at least one named plaintiff with standing to represent each subclass); *Susan J. v. Riley*, 254 F.R.D. 439, 451 (M.D. Ala. 2008) (the court must determine that "at least one named class [or subclass] representative has Article III standing to raise each class subclaim.") (quoting *Prado-Steiman v. Bush*, 221 F.3d 1266, 1279-80 (11th Cir. 2000)). Taking Plaintiff's allegations at face value, she does *not* claim to be a member of the multi-state subclass. That class, per her First Amended Complaint, consists of "all Class Members" (*i.e.*, "persons in the State of California who . . . purchased any of Defendant's Products at issue") *who also* "purchased any of the Products at issue in California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, or Washington." FAC, Doc. 27 at ¶¶ 62, 62(a). Plaintiff does not allege that she purchased the Products in any state but California, making her a member of the putative California class, but not the multi-state subclass.

It follows that when there is no representative plaintiff who claims to have purchased the Products in the States included in the multi-state subclass, all claims based on that state's laws are subject to dismissal because there is no named plaintiff with standing to assert them. *See Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1175 (N.D. Cal. 2017) ("I join the several other judges in this circuit who have addressed the question and opt here to require that plaintiffs present named class representatives who possess individual standing to assert each state law's claims against Nissan."); *see also Pardini v. Unilever U.S., Inc.*, 961 F. Supp. 2d 1048, 1061 (N.D. Cal. 2013) (holding that where there is only one named plaintiff who purchased products in California, she lacks standing "to assert a claim under the consumer protection laws of the other states" identified in the complaint). This Court has consistently applied this

rule from *Mazza v. American Honda Motor Co.*, in which the Ninth Circuit confirmed—reversing certification of a nationwide class under California's choice-of-law rules—that "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." 666 F.3d 581, 594 (9th Cir. 2012)*, overruled in part and on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022). This Court has held that *Mazza* is "not only relevant, but controlling, even at the pleadings stage." *Zeiger*, 304 F. Supp. 3d at 847 (citing *Johnson*, 272 F. Supp. 3d at 1174-75); *Cover v. Windsor Surry Co.*, No. 14-cv-05262-WHO, 2016 WL 520991, at *5 (N.D. Cal. Feb. 10, 2016). The Court does not stand alone; as it recognized in *Zeiger*, other courts within this District apply the same rule. *Zeiger*, 304 F. Supp. 3d at 847; *see also Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 990 (N.D. Cal. 2016) ("Courts routinely dismiss claims where no plaintiff is alleged to reside in a state whose laws the class seeks to enforce") (quoting *In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, No. 09 MDL 2007-GW(PJWx), 2009 WL 9502003, at *6 (C.D. Cal. July 6, 2009)); *Frezza v. Google, Inc.*, No. 5:12-CV-00237-RMW, 2013 WL 1736788, at *5-6 (N.D. Cal. Apr. 22, 2013) ("[T]he principle articulated in *Mazza* applies generally and is instructive even when addressing a motion to dismiss.").

As it did in *Johnson*, *Cover*, and *Zeiger*, this Court should again address the *Mazza* choice-of-law issues at the pleadings stage rather than at class certification, and with the same result. Plaintiff is a California resident, but purports to represent a multi-state class of consumers, creating "the significant burden" of multi-jurisdiction discovery. *Zeiger*, 304 F. Supp. 3d at 847; *see also In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1074 (N.D. Cal. 2015) ("The Court has reservations of subjecting the [defendant] to the expense and burden of nationwide discovery without Plaintiffs first securing actual plaintiffs who clearly have standing and are willing and able to assert claims under these state laws."). Plaintiff, however, offers no allegations in her Complaint to suggest that California has an interest in applying its law to out-of-state transactions sufficient to outweigh the interest of other States. Thus, without any named plaintiff to represent members of the alleged subclass who purchased the Products in one of the nine other States alleged by Plaintiff, *Mazza* calls for dismissing Plaintiff's multi-state consumer fraud claim and subclass at the pleadings stage.

**C.  Several of Plaintiff's California and common-law claims fail for other reasons.**

**1.  The express representations Plaintiff identifies are not actionable because they are either truthful statements or subjective opinions about product attributes.**

Even if Plaintiff had standing to proceed with her claims under California law, the representations on which she dwells in her Complaint are not actionable as affirmative misrepresentations sufficient to support her UCL, CLRA, and FAL claims. To be an actionable affirmative misrepresentation, a statement must "make a specific and measureable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact." *Parent v. MillerCoors LLC*, No. 15-cv-1204, 2015 WL 6455752, at *8 (S.D. Cal. Oct. 26, 2015) (quoting *Vitt v. Apple Comput., Inc.*, 469 F. App'x 605, 607 (9th Cir. 2012)). Subjective or general opinions about product attributes are not enough. *McKinney v. Google, Inc.*, No. 10-cv-01177, 2011 WL 3862120, at *6 (N.D. Cal. Aug. 30, 2011) ("Although [m]isdescriptions of specific or absolute characteristics are actionable, [g]eneralized, vague, and unspecified assertions constitute mere puffery upon which a reasonable consumer could not rely.").

Several of the statements on which Plaintiff relies in her Complaint fall well short of being "specific and measurable," such as the allegation on the Kibbles 'n Bits label that there is "balanced nourishment in every bite" or the statement on the Meow Mix label that it is intended for cats' "indoor health." FAC ¶¶ 46-47. The same is true for the representation on both products' labels stating that they provide "100% Complete and Balanced Nutrition." *Id.* None of these are actionable misrepresentations under California law. *See, e.g.*, *Fraker v. KFC Corp.*, No. 06-CV-01284, 2007 WL 1296571, at *3 (S.D. Cal. Apr. 30, 2007) (holding that "highest quality ingredients," "balanced diet plan," and "part of a sensible balanced diet" are non-actionable puffery).

The other aspects of the label identified in the Complaint are also non-actionable, largely because Plaintiff has not alleged anything that would make them objectively false. These include representations on the 9Lives cat food packaging that it will build "strong muscles," enable "healthy heart and vision," produce "healthy skin & coat," "help[] support a healthy immune system," "help[] support healthy weight & metabolism," and "help[] maintain weight & digestion." FAC at ¶ 45. Even taking all of Plaintiff's allegations about the potential risks of TiO2 and PFAS as true, Plaintiff has not alleged *how* that risk

12

MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT UNDER FED. R. CIV. P. 12(B)(1) AND 12(B)(6)

Case No. 3:22-cv-06913-WHO

impacts pets and whether it would render any of these claims regarding muscles, heart health, vision, skin, coat, weight, digestion, and metabolism untrue. She merely assumes that because TiO2 and PFAS allegedly carry "significant health concerns," these representations are *necessarily* false. It is certainly possible, however, that some of these representations would remain true even if Plaintiff were able to show that exposure to these substances carried other adverse health consequences. More is therefore required; Plaintiff must be able to articulate *how* her theory regarding TiO2 and PFAS renders these representations untrue. Her failure to do so requires dismissal for failure to state a claim.

### 2. Plaintiff has failed to allege facts sufficient to state a claim for negligent misrepresentation (Count VII).

A cause of action for negligent misrepresentation exists in only two situations under California law, neither of which Plaintiff alleges:

> California courts have recognized a cause of action for negligent misrepresentation, i.e., a duty to communicate accurate information, in two circumstances. The first situation arises **where providing false information poses a risk of and results in physical harm** to person or property. The second situation arises **where information is conveyed in a commercial setting for a business purpose**.

*Bock v. Hansen*, 225 Cal. App. 4th 215, 229 (Cal. Ct. App. 2014); *see also 818Computer, Inc. v. Sentinel Ins. Co., Ltd.*, No. CV 19-0009-MWF (PLAx), 2019 WL 698102, at *3 (C.D. Cal. Feb. 19, 2019). Nowhere in Count VIII (or in the First Amended Complaint more generally) does Plaintiff even attempt to allege the existence of a physical harm *or* that she purchased the Products for a "business purpose." As such, her negligent misrepresentation claim should be dismissed for failure to state a claim.

## IV. CONCLUSION

Plaintiff's First Amended Class Action Complaint should be dismissed in its entirety because Plaintiff fails to allege a cognizable injury in fact, and thus there is no case or controversy over which this Court may exercise subject-matter jurisdiction. But even if Plaintiff's allegations were sufficient to establish her own standing to sue, she lacks standing to represent the members of her alleged multi-state subclass who purchased the Products outside of California, and so this Court should at least dismiss her subclass claims (Count X). Further, and in the alternative, dismissal is also appropriate for Plaintiff's

failure to state a claim because Plaintiff has failed to allege actionable misrepresentations and essential elements of several of her California statutory and common-law claims.

Accordingly, Smucker respectfully requests that the Court grant its Motion to Dismiss.

DATED: March 31, 2023

TUCKER ELLIS LLP

By: */s/ Michael J. Ruttinger*
Michael J. Ruttinger
Attorneys for Defendant
The J.M. Smucker Company