1
2
3
4                      UNITED STATES DISTRICT COURT
5                     NORTHERN DISTRICT OF CALIFORNIA
6

7     ROBIN HUMPHREY,                       Case No.  22-cv-06913-WHO
8                    Plaintiff,
                                            **ORDER GRANTING IN PART AND**
9            v.                             **DENYING IN PART MOTION TO**
                                            **DISMISS**
10    THE J.M. SMUCKER COMPANY,
                                            Re: Dkt. No. 28
11                   Defendant.
12

13           Defendant The J.M. Smucker Co. ("Smucker") moves to dismiss a class action complaint

14    brought by plaintiff Robin Humphrey, who alleges that Smucker falsely represented that certain

15    dog and cat food products were healthy for pets when in fact they contain titanium dioxide

16    ("TiO2") and their packaging contains (or risks containing) per-and polyfluoroalkyl substances

17    ("PFAS"), both of which can cause detrimental health effects.  Smucker's motion is GRANTED

18    in part and DENIED in part.[1]  Humphrey has alleged an injury to show individual standing in this

19    false advertising case but does not have standing to assert claims on behalf of other class members

20    who purchased the products in other states.  The claims asserted on behalf of the multi-state

21    subclass are DISMISSED with leave to amend.  Otherwise, Humphrey's claims may proceed.  The

22    alleged statements at issue are actionable at this point, and Smucker's challenge to her negligent

23    misrepresentation claim is not persuasive.

24                                      **BACKGROUND**

25           Three brands of pet food are pertinent to this case: 9Lives, Kibbles 'n Bits, and Meow Mix

26    (collectively, "the products").  First Am. Compl. ("FAC") [Dkt. No. 27] ¶ 1.  Humphrey, a

27    _____

28    [1] Pursuant to Civil Local Rule 7-1(b), this motion is suitable for disposition without oral argument
      and the May 24, 2023, hearing is VACATED.

United States District Court
Northern District of California

California resident, alleges that she purchased these products because of her interest in "providing her pets with healthful food that would not expose her pets to harmful chemicals or other substances." *See id*. ¶¶ 17-18.  Her most recent purchase occurred at her local Walmart in July 2022.  *Id*. ¶ 18.

Before purchasing the products, Humphrey allegedly reviewed and relied on representations on their labeling, packaging, and marketing materials, which stated that the products were healthy for animals. *See id*. ¶¶ 18-19.  The FAC alleges that the following statements were made on the 9Lives cat food packaging:

- "Caring for cats since 1959"
- "100% Complete & Balanced for Adult Maintenance"
- "100% Complete and Balanced Nutrition for Adult Cats"
- "Helps Support a Healthy Immune System"
- "Helps Support Healthy Weight & Metabolism"
- "Helps Maintain Weight & Digestion"
- "Blend of Essential Vitamins and Minerals"
- "High Quality Ingredients & Natural Fiber"

*Id*. ¶ 45.  Smucker "further represents that the pet food will build 'strong muscles,' enable 'healthy heart and vision,' and produce 'healthy skin & coat.'"  *Id*.  The FAC alleges that Humphrey saw these representations, understood them to mean that the products "were healthful for her cat," and would not have purchased them "absent her desire to provide healthful nutrition for her cat."  *Id*.

The FAC identifies two statements made on the Kibbles 'n Bits dog food packaging: "100% Complete and Balanced Nutrition for Adult Dogs" and "balanced nourishment in every bite!"  *Id*. ¶ 46.  Humphrey allegedly saw these representations, understood them to mean that the products "were healthful for her dog," and would not have purchased them otherwise.  *See id*.

Humphrey allegedly saw the following statements on the Meow Mix cat food packaging:

- "100% Complete & Balanced Nutrition For Adult Cats"
- "indoor health"
- "all essential vitamins & minerals"

2

- "antioxidants [that] help support a long, healthy life"
- "helps maintain healthy weight"

*Id*. ¶ 47.  Again, the FAC alleges that Humphrey understood these representations to mean that the food was "healthful for her cat," and would not have purchased the products otherwise.  *See id*.

Despite these representations, the FAC alleges that the products contain TiO2, an "inorganic compound" that is "relied upon heavily as a pigment in a variety of applications including paint, sunscreen, and food coloring."  *See id*. ¶¶ 25, 49.  According to the FAC, "research has shown that TiO2 can pass through biological membranes, circulate through the body, and enter cells," resulting in "detrimental health effects including DNA and chromosomal damage, organ damage, inflammation, brain damage, genital malformations, lesions in the liver and kidneys, and cell neurosis."  *Id*. ¶ 28.  It further alleges that "[t]hese health concerns . . . are not limited to human foods," noting that Petco ("North America's second-largest pet supplies chain") removed pet food and treats containing TiO2 by May 2019.  *Id*. ¶ 30.

In addition, the FAC alleges that the products' packaging "contain (or risk containing)" PFAS, "synthetical chemicals that pose undue health risks."  *Id*. ¶ 1.  According to the FAC, researchers have established that PFAS "are incredibly mobile" and "readily migrate into food," posing risks of serious health effects including kidney and liver damage, cancer, and increased cholesterol levels.  *Id*. ¶¶ 40-42.

Because the products allegedly contain TiO2 and their packaging contains (or risks containing) PFAS, Humphrey contends that the products "are not healthful" as represented and instead "pose a significant health risk" to pets.  *See id.* ¶ 15.  The FAC alleges that Smucker does not inform consumers that the products contain or risk containing PFAS and only references TiO2 on the products' ingredient list—"in tightly woven, miniscule block print on the back of the products, which consumers are unlikely to notice."  *Id*. ¶ 13.

Humphrey sued Smucker in November 2022, and filed the FAC nearly five months later. Dkt. Nos. 1, 27.  The FAC alleges 10 claims: violations of California's Unfair Competition Law ("UCL"), Consumers Legal Remedies Act ("CLRA") and False Advertising Law ("FAL") and of the consumer fraud acts of the states named in the proposed subclass; along with fraud, fraudulent

United States District Court
Northern District of California

1  inducement, fraudulent concealment or omission, fraudulent misrepresentation, negligent

2  misrepresentation, and unjust enrichment.  Dkt. No. 27.  Humphrey asserts these claims on behalf

3  of a two classes, the first of which ("the Class") is defined as:

> [A]ll persons in the State of California who, within the applicable statute of
> limitations period, up to and including the date of final judgment in this action,
> purchased any of defendant's products at issue.

6  *Id*. ¶ 62.  The second is a "Consumer Fraud Multi-State Subclass," defined as:

> [A]ll Class Members who within the applicable statutes of limitations period, up to
> and including the date of final judgment in this action, purchased any of the
> products at issue in California, Florida, Illinois, Massachusetts, Michigan,
> Minnesota, Missouri, New Jersey, New York, or Washington).

10  *Id*.

11      Three weeks after Humphrey filed the FAC, Smucker moved to dismiss.  Dkt. No. 28.

## LEGAL STANDARD

### I.      RULE 12(B)(1)

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject

matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  "Federal courts are courts of limited

jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction."  *Kokkonen v.*

*Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994).  The party invoking the jurisdiction of the

federal court bears the burden of establishing that the court has the requisite subject matter

jurisdiction to grant the relief requested.  *Id.*

"Challenges to Article III standing implicate a court's subject matter jurisdiction and

therefore are properly raised under" Rule 12(b)(1).  *Center for Food Safety v. Perdue*, 517 F.

Supp. 3d 1034, 1037 (N.D Cal. 2021) (citation omitted).  A plaintiff must establish standing to

bring claims, which at an "irreducible minimum" requires three elements: "(1) an injury that is (2)

fairly traceable to the defendant's allegedly unlawful conduct and that is (3) likely to be redressed

by the requested relief."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 590 (1992).

A challenge pursuant to Rule 12(b)(1) may be facial or factual.  *See White v. Lee*, 227 F.3d

1214, 1242 (9th Cir. 2000).  In a facial attack, the jurisdictional challenge is confined to the

allegations pled in the complaint.  *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

United States District Court
Northern District of California

United States District Court
Northern District of California

1   The challenger asserts that the allegations in the complaint are insufficient "on their face" to

2   invoke federal jurisdiction. *See Safe Air Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th

3   Cir. 2004). To resolve this challenge, the court assumes that the allegations in the complaint are

4   true and draws all reasonable inference in favor of the party opposing dismissal. *See Wolfe*, 392

5   F.3d at 362.

6           "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by

7   themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. To resolve

8   this challenge, the court "need not presume the truthfulness of the plaintiff's allegations." *Id.*

9   (citation omitted). Instead, the court "may review evidence beyond the complaint without

10  converting the motion to dismiss into a motion for summary judgment." *Id.* (same). Once the

11  moving party has made a factual challenge by offering affidavits or other evidence to dispute the

12  allegations in the complaint, the party opposing the motion must "present affidavits or any other

13  evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject

14  matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989); *see also Savage*

15  *v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

16  **II.      RULE 12(B)(6)**

17          Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint

18  if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, the

19  plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

20  *Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff

21  pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for

22  the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There

23  must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts

24  do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to

25  "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

26          In deciding whether the plaintiff has stated a claim upon which relief can be granted, the

27  court accepts her allegations as true and draws all reasonable inferences in her favor. *See Usher v.*

28  *City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to

1    accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or

2    unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

3         If the court dismisses the complaint, it "should grant leave to amend even if no request to

4    amend the pleading was made, unless it determines that the pleading could not possibly be cured

5    by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making

6    this determination, the court should consider factors such as "the presence or absence of undue

7    delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments,

8    undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport*

9    *Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

                                    **DISCUSSION**

10

11   **I.    STANDING**

12        Smucker first challenges Humphrey's standing to bring her claims. Mot. to Dismiss

13   ("MTD") [Dkt. No. 28] 6:3-21. Central to Smucker's argument is its interpretation of this matter

14   as a product defect case, not one of false advertising. *See id*. at 6:15-21. Smucker contends that

15   "[a]ll of plaintiff's claims turn on her assumption that the products are necessarily unsafe, that

16   selling them was negligent, and that describing them as safe was misleading—that is, that they are

17   defectively designed and labeled." *Id*. at 6:15-19. According to Smucker, Humphrey "tries to

18   dress a no-injury product liability lawsuit in the clothes of a consumer false advertising case, even

19   though her allegations unequivocally challenge the products' alleged underlying toxicity, and thus

20   their safety for any purpose." *Id*. at 6:19-21. And, Smucker argues, in a product defect case

21   where the product did not malfunction, a plaintiff must allege something more than overpayment

22   to establish standing. *See id*. at 2:3-5.

23        Humphrey responds that "[t]his is a simple false advertising case": Smucker represents that

24   the products are "healthy and safe, when in reality the products contain harmful chemicals

25   rendering the labeling and representations false." Oppo. [Dkt. No. 31] 1:2-4. She accuses

26   Smucker of attempting to "heighten plaintiff's pleading requirements by painting the case as one

27   premised on a defective product." *Id*. at 2 n.1.

28        It is well-established that a plaintiff is the master of her complaint. *See Newtok Village v.*

United States District Court
Northern District of California

United States District Court
Northern District of California

1    *Patrick*, 21 F.4th 608, 616 (9th Cir. 2021).  This principle is often applied in the context of

2    whether a federal question is presented on the face of a well-pleaded complaint.  *See id*.  But the

3    same principle carries over here.  Just as a plaintiff may plead certain claims to invoke (or avoid)

4    federal jurisdiction, she may plead certain claims in lieu of others, depending on her theory of the

5    case.

6         Smucker's attempt to recast this as a product defect case lacks merit.  The allegations and

7    claims presented in the FAC align with a theory of false advertising: Humphrey alleges that

8    Smucker represents that the products are healthy for cats and dogs despite knowing (and failing to

9    adequately disclose) that they contain TiO2 and that their packaging contains (or risks containing)

10   PFAS, both of which are harmful.  *See* FAC ¶¶ 1-2, 8.  The FAC alleges that Humphrey relied on

11   the allegedly false and misleading statements on the packaging, purchased the products believing

12   they were "free from harmful ingredients and would indeed support . . . the health of her pets," and

13   would not have done so had she known "the true facts about their contents."  *Id*. ¶¶ 18-19.

14        These types of false advertising cases are common in this District, as Humphrey notes.  *See*

15   Oppo. at 4:3-5:2.  Two of mine are illustrative.  *Gagetta v. Walmart, Inc.*, No. 22-CV-03757-

16   WHO, --- F. Supp. 3d ----, 2022 WL 17812924, at *1-2 (N.D. Cal. Dec. 19, 2022), was premised

17   on allegations that the plaintiffs purchased several herbs and spices that "contain (or have a risk of

18   containing) unsafe toxic heavy metals," and that their labels—which the plaintiffs allegedly saw

19   and relied upon in deciding to purchase the products—"did not contain warnings that the products

20   contained or risked containing heavy metals."  The plaintiffs alleged that had they known that the

21   herbs and spices contained or risked containing the metals, they would not have purchased them or

22   would have paid less for them.  *Gagetta*, 2022 WL 17812924, at *1.  I determined that the "actual

23   economic harm" was that the plaintiffs "overpaid for products that they did not know risked

24   containing these metals, which they allege are unsafe at any level, and which [the defendant] does

25   not contest are likely present in the products."  *Id*. at *6.

26        In *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 842 (N.D. Cal. 2018), the plaintiffs alleged

27   that the defendants' dog food products contained "material and significant levels of arsenic and

28   lead" and/or BPA, which were dangerous for dogs.  The plaintiffs further alleged that the

defendants knew or should have known about the presence of those containments, but that their products did not "contain any warning label or disclose [their] presence." *Id*. at 842. Instead, the product labels allegedly "contain[ed] various health claims and promises," which the plaintiffs allegedly saw and relied upon in purchasing the dog food. *Id*. at 842-43. The plaintiffs also alleged that had they known that the products contained "any level of" arsenic, lead, or BPA, they would not have purchased them. *Id*. at 843. Drawing upon "[s]imilar allegations in the food mislabeling context," I determined that the plaintiffs had sufficiently alleged an economic injury based on their allegations that "were it not for defendants' labeling, which omit the presence of lead, arsenic, and BPA in their products, plaintiffs would not have purchased and spent money on their products." *See id*. at 846.

Smucker attempts to distinguish *Gagetta* and *Zeiger* by arguing that these cases allegedly "omitted something that the product inadvertently contained," and that Humphrey alleges that the products contain TiO2 and the packaging PFAS "by design, not by accident or contamination." *See* Reply [Dkt. No. 32] 2:25-3:14. This is a red herring. Neither *Gagetta* nor *Zeiger* expressly addressed whether the alleged contaminants were in the products intentionally or by accident. And that distinction has no apparent bearing on false advertising claims, which center on how a reasonable consumer would understand a product's labeling, packaging, or advertising. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (discussing reasonable consumer test for false advertising claims). Whether TiO2 and PFAS are in the products by design or not is not relevant; what matters is what Smucker represented to consumers and whether those consumers were likely to be deceived. *See id*.

Smucker contends that I "dealt with a similar situation" in *Cahen v. Toyota Motor Corporation*, 147 F. Supp. 3d 955, 967 (N.D. Cal. 2015), where I "treated plaintiffs' allegations not as traditional false advertising claims, but claims about an 'alleged product defect.'" MTD at 7:3-10. There, the product defect theory—and absence of real allegations about false advertising—were obvious. The plaintiffs' central allegation was that the defendants' vehicles relied on a computerized communication network that did not use any authentication or encryption and thus, were susceptible to remote hacking. *See Cahen*, 147 F. Supp. 3d at 958-59. Although

1  the plaintiffs further alleged that despite knowing of these security vulnerabilities, the defendants

2  "market their vehicles as safe," they framed their case as one involving a design defect.  *See id*. at

3  959.  This is evident throughout the operative complaint, which not only repeatedly referenced the

4  alleged "design defects," but also premised the claims on said defect.  *See Cahen v. Toyota Motor*

5  *Corp.*, No. 15-CV-01104-WHO (N.D. Cal. filed Mar. 10, 2015), Dkt. No. 37 (alleging in part that

6  the defendants "knowingly and intentionally conceal[ed] from plaintiffs . . . that the class vehicles

7  suffer from a design defect," that had the plaintiffs "known about the design defects . . . they

8  would not have purchased their class vehicles," and that the vehicles "are inherently defective in

9  that there are defects in the electronic and computerized components").  Those types of allegations

10 are not present here.  *See generally* FAC.

11        Smucker fixates on a few words within the FAC that it contends are "indicia of a product

12 liability case like *Cahen*, not a false advertising case."  *See* Reply at 2:22-24.  But a single

13 description of the products as "worthless" does not transform this into a product defect case.  *See*

14 *id*., *see also* FAC ¶ 51.  The other phrase that Smucker takes issue with—that the products are "not

15 safe for consumption"—does not appear in the FAC.  *See* Reply at 2:13-24; *see generally* FAC.

16        Humphrey casts her case as one of false advertising, which is consistent with the

17 allegations and claims within the FAC.  Her underlying theory—that Smucker represents that the

18 products are healthy for pets, but in reality contain TiO2 and PFAS—mirrors other false

19 advertising cases.  Smucker "offers no authority that permits the court to usurp plaintiffs' mastery

20 over their own pleading and rewrite their claim" under a different theory of liability.  *See Lacesa*

21 *v. Walgreen Co.*, No. 22-CV-02558, 2022 WL 19240778, at *1 (C.D. Cal. Sept. 22, 2022).  And

22 because the FAC alleges that Humphrey and other class members spent money that, absent

23 Smucker's actions, they would not have spent—"[a] quintessential injury-in-fact"—she has

24 plausibly shown an economic injury giving rise to standing.  *See* FAC ¶¶ 19, 61; *see also Zeiger*,

25 304 F. Supp. 3d at 846  ("A 'quintessential injury-in-fact' occurs when plaintiffs allege that they

26 'spent money that, absent defendants' actions, they would not have spent.") (citation omitted);

27 *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020) ("We have consistently recognized

28 that a plaintiff can satisfy the injury in fact requirement by showing that she paid more for a

1    product than she otherwise would have due to a defendant's false representations about the

2    product.").[2]

3    **II.      MULTI-STATE SUBCLASS**

4          "Plaintiffs must show they have standing for each claim they raise, and plaintiffs do not

5    have standing to bring claims under the laws of states where they have alleged no injury,

6    residence, or other pertinent connection."  *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 909

7    (N.D. Cal. 2019) (citations omitted); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352

8    (2006) ("a plaintiff must demonstrate standing for each claim he seeks to press").  Smucker argues

9    that Humphrey's claims asserted on behalf of the multi-state subclass should be dismissed because

10   she "lacks standing to represent consumers of the products who claim to have been injured by

11   violations of the consumer protection laws of states other than California."  MTD at 9:19-22; *see*

12   *also* FAC ¶¶ 166-174 (asserting a violation of the consumer fraud acts of the states in the multi-

13   state subclass).

14         Humphrey contends that Smucker's challenge implicates typicality and adequacy, making

15   it a question for class certification rather than the pleadings stage.  Oppo. at 10:14-24.  She relies

16   on the Ninth Circuit's decision in *Melendres v. Arpaio*, 784 F.3d 1254, 1261-62 (9th Cir. 2015),

17   where the court recommended the "class certification approach" of deferring until class

18   certification deciding whether class representatives had the ability to represent the claims of absent

19   class members.

20         As I have previously noted, *Melendres* addressed a different question: "namely, the ability

21   of named plaintiffs to represent absent class members who were subjected to different types of

22   unconstitutional searches."  *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 533

23   F. Supp. 3d 858, 881 (N.D. Cal. 2021).  "A number of my colleagues"—and me—"have expressly

24   addressed and declined to follow *Melendres* and rejected at the motion to dismiss stage absent

25   class member claims arising under state laws where no class member resided or was harmed."  *See*

26

27   _____

28   [2] Because the FAC sufficiently alleges an injury for standing purposes based on overpayment, I
     need not decide whether it also sufficiently alleges an injury under a benefit of the bargain theory.
     *See* Oppo. at 5:3-6:24.

United States District Court
Northern District of California

1    *id*. at 880-81 (citing cases).

2         I consider this question on a case by case basis; in this case, dismissal is appropriate now.

3    *See id.* at 881.  Humphrey alleges claims on behalf of class members living in nine other states:

4    Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and

5    Washington, yet alleges no injury, residence, or other "pertinent connection" to those states.  *See*

6    FAC ¶ 62; *Jones*, 400 F. Supp. 3d at 909.  Although this is not a nationwide class, and Humphrey

7    alleges that these states have "similar consumer fraud laws," discovery across nine additional

8    states will still be significant.  *See* FAC ¶ 62 n.7; *see also Johnson v. Nissan N. Am., Inc.*, 272 F.

9    Supp. 3d 1168, 1175 (N.D. Cal. 2017) (dismissing at the pleading stage claims asserted on behalf

10   of a nationwide class because "plaintiffs have two named class representatives in two states

11   purporting to represent a nationwide class, creating the significant burden of nationwide

12   discovery"); *Zeiger*, 304 F. Supp. 3d at 847 (dismissing claims at the pleading stage in part

13   because "[p]laintiffs are all residents of California, but purport to represent a nationwide class,

14   creating the significant burden of nationwide discovery").  Allowing unrepresented claims to

15   proceed "would subject defendants to discovery in these additional states before plaintiffs have

16   secured actual plaintiffs who clearly have standing and are willing and able to assert claims under

17   these state laws."  *See Jones*, 400 F. Supp. 3d at 910 (citation and quotations omitted).

18        I will give Humphrey the opportunity to find those other plaintiffs.  Claim 10, which

19   asserts violations of the consumer fraud acts of the states in the multi-state subclass, is

20   DISMISSED with leave to amend.

21   **III.    ALLEGED MISREPRESENTATIONS**

22        Turning to the merits of Humphrey's claims, Smucker argues that the statements alleged in

23   the FAC are not actionable affirmative misrepresentations, because they are not specific and

24   measurable, not sufficiently alleged to be false, or amount to subjective opinions.  MTD at 12:2-

25   13:7.  According to Smucker, the UCL, CLRA, and FAL claims fail as a result.  *Id*. at 12:4-6.

26        "Although misdescriptions of specific or absolute characteristics of a product are

27   actionable, generalized, vague, and unspecified assertions constitute mere puffery upon which a

28   reasonable consumer could not rely, and hence are not actionable."  *McKinney v. Google, Inc.*, No.

United States District Court
Northern District of California

1    10-CV-01177-EJD, 2011 WL 3862120, at *6 (N.D. Cal. Aug. 30, 2021) (citations omitted and

2    cleaned up).  Unlike puffery, a representation of fact "is one which makes a specific and

3    measurable claim, capable of being proved false or of being reasonably interpreted as a statement

4    of objective fact." *Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1039 (N.D. Cal. 2014) (citations

5    and quotations omitted).

6            Smucker argues that certain statements alleged in the FAC are not "specific and

7    measurable": "balanced nourishment in every bite" (on the Kibbles 'n Bits label); "indoor health"

8    (on the Meow Mix label); and "100% Complete and Balanced Nutrition" (on both).  MTD at

9    12:14-21.  In support, Smucker points to a Southern District of California case where the court

10   determined that the statements "highest quality ingredients," "balanced eating plan," and "part of a

11   sensible balanced diet" were non-actionable puffery.  *See id.* at 21:19-21 (citing *Fraker v. KFC

12   Corp.*, No. 06-CV-01284, 2007 WL 1296571, at *3 (S.D. Cal. Apr. 30, 2007)).

13           More recent cases have found similar statements to be actionable, at least at the pleading

14   stage.  *See, e.g., In re Big Heart Pet Brands Litig.*, No. 18-CV-00861-JSW, 2019 WL 8266869, at

15   *1, 17-18 (N.D. Cal. Oct. 4, 2019) (finding that the statement "100% Complete and Balanced

16   Nutrition" was actionable under the plaintiffs' theory that the defendant's dog food products

17   contained a drug used as a sedative, anesthetic, and a euthanizing agent); *Grossman v. Schell &

18   Kampeter, Inc.*, No. 18-CV-02344, 2019 WL 1298997, at *4-5 (E.D. Cal. Mar. 21, 2019) (finding

19   that statements on dog food packaging that it provided the  "balanced diet that nature intended,"

20   and helped support "optimal cellular health" and maintain "overall good health" "go beyond mere

21   puffery, into assertions of fact," because they conveyed that "the products are nutritious and safe"

22   while the plaintiffs alleged that they contained heavy metals, pesticides, acrylamide, and/or BPA).

23   Similarly, I wrote in *Zeiger* that statements "concerning safety and quality assurances" were not

24   objectively true (as alleged by the plaintiffs) nor a subjective opinion, and instead presented

25   "measurable claims that plaintiffs indeed seek to prove are false through this very suit."  *See

26   Zeiger*, 304 F. Supp. 3d at 851.

27           The same is true here.  Humphrey has identified a number of statements on the products'

28   packaging that, as alleged, imply that they are healthy for pets.  As alleged, the statements at issue

United States District Court
Northern District of California

12

make a specific and measurable claims that are capable of being proved false (i.e., that the products are *not* healthy because they contain TiO2 and PFAS, or risk containing the latter).  *See Rasmussen*, 27 F. Supp. 3d at 1039.  Alternatively, it is plausible that these statements are capable of being reasonably interpreted as a statement of objective fact—a point that Smucker does not contest.  *See id.*; *see generally* MTD.  Although some of the statements are closer calls than others ("indoor health," for example), read alongside other statements on the packaging (such as "100% Complete & Balanced Nutrition For Adult Cats" and "helps maintain healthy weight"), they plausibly "contribute[] . . . to the deceptive context of the packaging as a whole."  *See Williams*, 552 F.3d at 939 n.3 (finding that the word "'nutritious,' were it standing on its own, could arguably constitute puffery, since nutritiousness can be difficult to measure concretely," but that it contributed "to the deceptive context of the packaging as a whole" and thus could not be dismissed as puffery).

Smucker next argues that certain statements are not actionable because Humphrey "has not alleged anything that would make them objectively false."  MTD at 12:22-23.  It points to statements that the 9Lives cat food will build "strong muscles," enable "healthy heart and vision," produce "healthy skin & coat," "Helps Support a Healthy Immune System," "Helps Support Healthy Weight & Metabolism," and "Helps Maintain Weight & Digestion."  *Id.* at 12:22-26 (citing FAC ¶ 45).  It contends that even if Humphrey's allegations about the risks of TiO2 and PFAS are true, she "has not alleged how that risk impacts pets and whether it would render any of these claims regarding muscles, heart health, vision, skin, coat, weight, digestion, and metabolism untrue."  *Id.* at 12:26-13:2.

Smucker ignores allegations in the FAC that TiO2 and PFAS "are linked to harmful health effects—such as DNA and chromosomal damage, organ damage, inflammation, brain damage, genital malformations, lesions in the liver and kidneys, cell neurosis, damage to the liver and immune system, various cancers, increased cholesterol levels, increased risk of obesity, adverse cardiovascular effects, and eye disease."  *See* FAC ¶ 52.  Contrary to Smucker's assertions, the FAC expressly alleges how the risks of TiO2 and PFAS impact heart health, vision, and weight. *See id.*  And it says that TiO2 and PFAS can cause organ damage, inflammation, cell neurosis, and

13

1    various cancers could plausibly impact a pet's muscles, skin, coat, digestion, or metabolism.  *See*

2    *id*.  The FAC sufficiently links the alleged risks of TiO2 and PFAS to the statements at issue in a

3    way that would make them objectively false.

4          Smucker's arguments that the statements identified in the FAC are not actionable fall

5    short.  With no other argument against the UCL, CLRA, and FAL claims, they may proceed.

6    **IV.    NEGLIGENT MISREPRESENTATION**

7          Finally, Smucker argues that Humphrey's negligent misrepresentation claim must be

8    dismissed because it does not allege a physical harm or that she purchased the products for a

9    business purpose.  MTD at 13:8-20.  Humphrey argues that these are not among the elements of a

10   negligent misrepresentation claim, which are: "(1) misrepresentation of a past or existing material

11   fact, without reasonable ground for believing it to be true, and (2) with intent to induce another's

12   reliance on the fact misrepresented; (3) ignorance of the truth and justifiable reliance on the

13   misrepresentation by the party to whom it was directed; and (4) resulting damage."  Oppo. at 15:2-

14   11 (citing *Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 924 (N.D. Cal. 2013)).

15         Smucker's argument is premised on *Bock v. Hansen*, 225 Cal. App. 4th 215, 229 (2014).  It

16   is not clear that the case applies here.  *See* MTD at 13:8-20.  The primary question in *Bock* was

17   whether a negligent misrepresentation claim could lie against an insurance adjuster as a matter of

18   law.  *See* 225 Cal. App. 4th at 226.  The court determined that it could because a special

19   relationship existed between the insurer and the insured, and that as an employee of the insurer,

20   the adjuster owed a duty to the insured.  *See id*. at 229.  The court then went on to state that:

21         Likewise, the general law of negligent misrepresentation applies.  It is generally
22         said that ". . . California courts have recognized a cause of action for negligent
         misrepresentation, i.e., a duty to communicate accurate information, in two
23         circumstances.  The first situation arises where providing false information poses a
         risk of and results in physical harm to person or property.  The second situation
24         arises where information is conveyed in a commercial setting for a business
         purpose.
25
   *Id*. (citing *Friedman v. Merck & Co.*, 17 Cal. App. 4th 454, 477 (2003)).  Smucker relies on this
26
   passage in arguing that one of two "legal prerequisites" must exist for a plaintiff to assert a
27
   negligent misrepresentation claim: a risk of physical harm or that the information was conveyed in
28

a commercial setting.  *See* MTD at 13:10-20; Reply at 8:14-16.

It appears that courts primarily apply *Bock* in the insurance context when determining whether an insurance adjuster may be held liable for a negligent misrepresentation claim.  *See, e.g., Njoku v. GEICO Gen. Ins. Co.*, No. 19-CV-07757-JST, 2020 WL 4915433, at *2-3 (N.D. Cal. May 6, 2020); *Nido v. Nationwide Mut. Ins. Co.*, No. 19-CV-07724-LHK, 2020 WL 1865324, at *5-6 (N.D. Cal. Apr. 14, 2020); *818Computer, Inc. v. Sentinel Ins. Co., Ltd.*, No. CV-19-0009, 2019 WL 698102, at *3-4 (C.D. Cal. Feb. 19, 2019).  Despite calling the proposition cited in *Bock* "black-letter California law," Smucker does not point to any case law or other authority applying the above-referenced statement to negligent misrepresentation claims asserted in consumer protection or false advertising cases.  *See* MTD at 13:8-20; Reply at 8:12-21.  Courts in this District and elsewhere *have* considered negligent misrepresentation claims in this or similar contexts without addressing the "legal prerequisites" that Smucker asserts.  *See, e.g., Alvarez v. Adtalem Educ. Grp.*, No. 19-CV-04079-JSW, 2019 WL 13065378, at *3 (N.D. Cal. Dec. 16, 2019) (allowing negligent misrepresentation claim to proceed based on a university's alleged misrepresentations about graduates' ability to obtain employment in their chosen career fields within six months of graduating); *Zeiger*, 304 F. Supp. 3d at 850-52; *Lemus v. Rite Aid Corp.*, 613 F. Supp. 3d 1269, 1281 (C.D. Cal. 2022) (allowing negligent misrepresentation claim to proceed in part because the plaintiffs had adequately alleged facts "peculiarly within the defendant's knowledge").  These courts have focused on the elements of a negligent misrepresentation claim (which do not include physical harm or that the information is conveyed in a commercial setting) or the application of the economic loss doctrine, which Smucker does not expressly challenge here.  *See, e.g., Robinson v. J.M. Smucker Co.*, No. 18-CV-04654-HSG, 2019 WL 2029069, at *5-6 (N.D. Cal. May 8, 2019) (dismissing negligent misrepresentation claim as barred by the economic loss rule).

And even if *Bock* did stand for the proposition that Smucker asserts, it is unclear why Humphrey's allegations do not satisfy the second situation: "where information is conveyed in a commercial setting for a business purpose."  *See* 225 Cal. App. 4th at 229.  *Friedman*, the case cited in *Bock*, explains that this "rules out casual statements or opinions given in ordinary private

1   conversations or social meetings" and applies to statements made during the course of business

2   when the defendant has a pecuniary interest in the transaction in which the information is

3   provided. *See Friedman*, 17 Cal. App. 4th at 481-83 (citations omitted). Smucker allegedly made

4   the statements at issue on the packaging of the products it sells to consumers, which it has a

5   pecuniary interest in selling, and thus would plausibly fall within this category. I see no reason to

6   dismiss the negligent misrepresentation claim at this stage.

## CONCLUSION

8   The motion to dismiss is DENIED in part and GRANTED in part, with leave to amend the

9   claims asserted on behalf of the multi-state subclass. Any amended complaint is due within 20

10  days of the issuance of this Order.

11  The Case Management Conference is reset for June 13, 2023, at 2:00 p.m. A Joint Case

12  Management Statement is due by June 6, 2023.

13  **IT IS SO ORDERED.**

14  Dated: May 22, 2023

William H. Orrick
United States District Judge

United States District Court
Northern District of California

16