TUCKER ELLIS LLP
Michael J. Ruttinger (admitted *pro hac vice*)
michael.ruttinger@tuckerellis.com
Ethan W. Weber (admitted *pro hac vice*)
ethan.weber@tuckerellis.com
Spencer E. Krebs (admitted *pro hac vice*)
spencer.krebs@tuckerellis.com
950 Main Avenue, Suite 1100
Cleveland, OH 44113
Telephone:        216.592.5000
Facsimile:        216.592.5009

TUCKER ELLIS LLP
Bart L. Kessel (SBN 125080)
bart.kessel@tuckerellis.com
Anna-Sophie Tirre (SBN 336835)
anna-sophie.tirre@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071
Telephone:        213.430.3400
Facsimile:        213.430.3409

Attorneys for Defendants
THE J.M. SMUCKER COMPANY and
POST CONSUMER BRANDS, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SANDRA JERUCHIM and MELISSA VARGAS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE J.M. SMUCKER COMPANY and POST CONSUMER BRANDS, LLC, <br><br> Defendants. | ) Case No. 3:22-CV-06913-WHO <br> ) <br> ) <br> ) <br> ) **DEFENDANTS' RESPONSE IN** <br> ) **OPPOSITION TO PLAINTIFFS'** <br> ) **MOTION FOR CLASS CERTIFICATION** <br> ) <br> ) Judge: Hon. William H. Orrick <br> ) <br> ) Date:        November 19, 2025 <br> ) Time:        2:00 p.m. <br> ) Courtroom:   2 – 17th Floor |

TUCKER ELLIS LLP

Atlanta ♦ Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ Morristown, NJ ♦ Orange County ♦ San Francisco ♦ St. Louis ♦ Washington, D.C.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TUCKER ELLIS LLP

Atlanta ♦ Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ Morristown, NJ ♦ Orange County ♦ San Francisco ♦ St. Louis ♦ Washington, D.C.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................... iii

I.    INTRODUCTION ............................................................................................1

II.   BACKGROUND ..............................................................................................3

    A.    Plaintiffs Jeruchim and Vargas never read—let alone relied on—Smucker's product labeling. ................................................................3

    B.    During the Class Period, Smucker sold pet food in multi-walled bags containing a PFAS component in the outside layer. ..............................5

    C.    To certify the class they seek, Plaintiffs must show that their PFAS Omissions theory can be adjudicated classwide. ..................................6

III.  LAW AND ARGUMENT ..................................................................................7

    A.    Legal Standard. ....................................................................................7

    B.    This Court cannot reach class certification because Plaintiffs Jeruchim and Vargas lack standing. ..................................................................7

        1.    Plaintiffs lack Article III standing. ............................................7

        2.    Plaintiffs lack statutory standing. ..............................................9

            a)    Plaintiffs did not rely on any claim on product packaging. ........9

            b)    There is no presumption of reliance for the proposed class because the claims and omissions were not material. ...............10

    C.    Plaintiffs are atypical, inadequate class representatives. ....................13

    D.    Individualized questions "predominate over" questions common to Plaintiffs' omissions-based liability theory. .......................................14

        1.    Because Smucker does not label its products as "PFAS Free," Plaintiffs cannot rely on a classwide duty to disclose an omission contrary to a representation made. .........................................16

        2.    Any attempt to tie a duty to disclose to allegations that PFAS in the Class Products' packaging poses a "safety hazard" stumbles over individualized issues. .............................................................17

        3.    Plaintiffs cannot rely on the *Hodsdon* "central function" test to create

DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

3:22-CV-06913-WHO

a classwide duty to disclose. ...................................................................................19

4.    Because the question of whether Smucker owed a duty to disclose
will vary by class member, common questions do not "predominate"
as Rule 23(b)(3) requires. ........................................................................20

IV.    CONCLUSION........................................................................................................21

TUCKER ELLIS LLP

Atlanta ♦ Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ Morristown, NJ ♦ Orange County ♦ San Francisco ♦ St. Louis ♦ Washington, D.C.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TUCKER ELLIS LLP

Atlanta ♦ Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ Morristown, NJ ♦ Orange County ♦ San Francisco ♦ St. Louis ♦ Washington, D.C.

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>**Cases**</u>

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................ 20

*Anderson v. Apple, Inc.*,
  500 F.Supp.3d 993 (N.D. Cal. 2020) ....................................... 8

*Brown v. Hain Celestial Grp., Inc.*,
  No. 11-cv-03082-LB, 2015 WL 3398415 (N.D. Cal. May 26, 2015) ............ 12

*Corbett v. Pharmacare U.S., Inc.*,
  544 F.Supp.3d 996 (S.D. Cal. 2021) ......................................... 9

*Dalewitz v. Procter & Gamble Co.*,
  No. 7:22-cv-07323 (NSR), 2023 WL 6215329 (S.D.N.Y. Sept. 22, 2023) ........ 8

*Daniel v. Ford Motor Co.*,
  806 F.3d 1217 (9th Cir. 2015) ............................................... 10

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ................................................ 7

*Erica P. John Fund, Inc. v. Halliburton Co.*,
  536 U.S. 804 (2011) .......................................................... 15

*Erickson v. Kimberly-Clark Corp.*,
  No. 24-cv-07032-AMO, 2025 WL 2105830 (N.D. Cal. July 28, 2025) ........... passim

*Gagetta v. Walmart, Inc.*,
  646 F.Supp.3d 1164 (N.D. Cal. 2022) ....................................... 9

*Gamino v. KPC Healthcare Holdings, Inc.*,
  No. 5:20-cv-01126-SB-SHK, 2022 WL 1043666 (C.D. Cal. Apr. 5, 2022) ........ 14

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982) .......................................................... 13

*Grausz v. Hershey Co.*,
  713 F. Supp. 3d 818 (S.D. Cal. 2024) ....................................... 17

*Hammerling v. Google LLC*,
  615 F.Supp.3d 1069 (N.D. Cal. 2022) ....................................... 15

*Hanlon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ............................................... 7, 13

DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION
3:22-CV-06913-WHO

*Hansen v. Newegg.com Americas, Inc.*,
   25 Cal. App. 5th 714 (2018) ........................................................................ 12

*Hinojos v. Kohl's Corp.*,
   718 F.3d 1098 (9th Cir. 2013) ..................................................................... 12

*Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018) ................................................................. passim

*In re iPhone Application Litig.*,
   6 F.Supp.3d 1004 (N.D. Cal. 2013) ............................................................. 10

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*,
   609 F.Supp.3d 942 (N.D. Cal. 2022) ..................................................... 10, 15

*In re Trader Joe's Co. Dark Chocolate Litig.*,
   726 F.Supp.3d 1150 (S.D. Cal. 2024) ................................................ 2, 15, 19

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
   601 F.Supp.3d 625 (C.D. Cal. 2022) ............................................................ 11

*Jones v. ConAgra Foods, Inc.*,
   No. C 12-01633 CRB, 2014 WL 2702726 (N.D. Cal. June 13, 2014) ........... 13

*Kwikset Corp. v. Superior Ct.*,
   246 P.3d 877 (Cal. 2011) ............................................................................. 12

*Lierboe v. State Farm Mut. Auto. Ins. Co.*,
   350 F.3d 1018 (9th Cir. 2003) ....................................................................... 7

*LiMandri v. Judkins*,
   52 Cal. App. 4th 326 (Cal. Ct. App. 1997) ............................................. 15, 19

*Lopez v. Mead Johnson Nutrition Co.*,
   No. 24-cv-03573-HSG, 2025 WL 895213 (N.D. Cal. Mar. 24, 2025) ........... 16

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ....................................................................................... 7

*Martin v. Dahlberg, Inc.*,
   156 F.R.D. 207 (N.D. Cal. 1994) .................................................................. 20

*Mazur v. eBay, Inc.*,
   257 F.R.D. 563 (N.D. Cal. 2009) .................................................................. 13

*Moeller v. Taco Bell Corp.*,
   220 F.R.D. 604 (N.D. Cal. 2004) .................................................................. 14

DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION
3:22-CV-06913-WHO

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
   238 F.R.D. 482 (C.D. Cal. 2006) ........................................................................ 20

*NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
   926 F.3d 528 (9th Cir. 2019) ........................................................................... 2, 7

*Oddo v. Arocaire Air Conditioning & Heating*,
   No. 8:15-cv-01985-CAS, 2020 WL 5267917 (C.D. Cal. May 18, 2020) .................................. passim

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ............................................................................ 14

*Stearns v. Ticketmaster, Corp.*,
   655 F.3d 1013 (9th Cir. 2011) ........................................................................... 13

*Sud v. Costco Wholesale Corp.*,
   229 F.Supp.3d 1075, 1083 (N.D. Cal. 2017) ............................................................. 10

*Townsend v. Monster Beverage Corp.*,
   303 F.Supp.3d 1010 (C.D. Cal. 2018) .................................................................... 11

*Van v. LLR, Inc.*,
   61 F.4th 1053 (9th Cir. 2023) ........................................................................... 20

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ...................................................................................... 7

*Williams v. Yamaha Motor Co.*,
   851 F.3d 1015 (9th Cir. 2017) ........................................................................... 17

*Yates v. United States*,
   574 U.S. 528 (2015) ..................................................................................... 11

**Statutes**

Cal. Health & Safety Code § 109000 ....................................................................... 11, 12

Cal. Health & Safety Code § 113781 ....................................................................... 11

N.Y. G.B.L. § 349 .......................................................................................... 8

**Rules**

Fed. R. Civ. P. 23(a) ..................................................................................... 14

Fed. R. Civ. P. 23(a)(3) ................................................................................. 13

Fed. R. Civ. P. 23(a)(4) ................................................................................. 13

DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION
3:22-CV-06913-WHO

Fed. R. Civ. P. 23(b) ........................................................................................................... 7

Fed. R. Civ. P. 23(b)(3) ............................................................................................ 14, 15, 20, 21

DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

3:22-CV-06913-WHO

TUCKER ELLIS LLP

Atlanta ♦ Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ Morristown, NJ ♦ Orange County ♦ San Francisco ♦ St. Louis ♦ Washington, D.C.

## I.    INTRODUCTION

A class action is the wrong vehicle for Plaintiffs' false advertising claims. Plaintiffs allege that the J.M. Smucker Company ("Smucker")[1] had a legal obligation to disclose to consumers that it sold pet food marketed under the MeowMix, 9Lives, and Kibbles 'n Bits brands in packaging containing PFAS," which is "harmful if ingested." *See* Pls' Mot. for Class Certification ("Pls' Mot.") [Dkt. 86] 4:11. But there are two overarching problems with Plaintiffs' arguments. First, Plaintiffs lack standing (and are atypical of the class they seek to represent) because they never read—much less *relied on*—Smucker's labeling. And second, there is no classwide way to determine whether nondisclosure of PFAS chemicals used in Smucker pet food bags violates California law.

PFAS is not an ingredient in Smucker's pet foods. Dep. Tr. of Amy Stefanescu ("Stefanescu Dep."), 22:20 (Ex. A to Decl. of Michael J. Ruttinger ("Ruttinger Decl.")). Smucker (like other pet food companies nationwide) used PFAS as a grease-wicking agent on the *packaging* for some products, particularly dry "kibble" products sold in multi-walled plastic bags. During the proposed Class Period, the packaging component that contained PFAS was applied to the outside layer of those bags to "prevent the grease from migrating out of the package itself," which "could cause the paper to get wet and lead to breakage" or "staining." *Id.* at 49:24–50:1. The part of the packaging containing PFAS had little, if any, direct contact with the pet food itself. *Id.* at 43:7–10. Therefore, PFAS could not affect the safety of Smucker's pet food *unless* it could first "migrate" through the other, non-PFAS layers of Smucker's packaging and then into the pet food itself. Although this PFAS migration theory is central to Plaintiffs' class claims, Plaintiffs never tested whether PFAS *can* migrate through multiple layers of packaging into pet food, and their own expert admits that even if it *could*, the safety impact—if any—would be individualized and pet-specific. These individualized implications pose a fundamental problem for the proposed class.

---

[1] Plaintiffs also name Post Consumer Brands ("Post") as a Defendant. Plaintiffs correctly allege Defendant Post made, advertised, and sold the 9Lives and Kibbles 'n Bits products *after* "approximately April 2023." TAC [Dkt. 63] ¶ 26. But Plaintiffs' own proposed class only includes purchasers of products sold through December 31, 2022. Pls' Mot. [Dkt. 86] at 4:7–9. As such, Post is not properly a defendant to the class Plaintiffs seek to certify and this brief focuses only on Smucker, not Post. It is undisputed that MeowMix, Kibbles 'n Bits, and 9Lives were Smucker products at all times relevant to the proposed class.

TUCKER ELLIS LLP

Atlanta ◆ Chicago ◆ Cleveland ◆ Columbus ◆ Los Angeles ◆ Morristown, NJ ◆ Orange County ◆ San Francisco ◆ St. Louis ◆ Washington, D.C.

TUCKER ELLIS LLP

Atlanta ♦ Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ Morristown, NJ ♦ Orange County ♦ San Francisco ♦ St. Louis ♦ Washington, D.C.

First, this Court should not even reach class certification because the named Plaintiffs lack Article III and statutory standing. Plaintiffs allege two forms of misrepresentation: misleading "Health Claims" and the "PFAS Omission." Pls.' Mot. [Dkt. 86] 4:6–9. To have standing to sue over the Health Claims, Plaintiffs must show "actual reliance." Neither can. Jeruchim and Vargas both testified that they *did not read*, let alone rely on, any representations on the product labels. Demonstrating a misrepresentation based on the PFAS Omission likewise requires "reliance;" Plaintiffs must show by reasonable inference that if Smucker made a PFAS disclosure, they would have seen it. Typically, plaintiffs do so by alleging that they read a manufacturer's labels. But these Plaintiffs never read *any* part of the product labels, so there is no plausible way for them to establish their alleged injury is "fairly traceable" to Smucker's omission. Thus, they lack standing to sue under either theory and with them falls the proposed class. *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019) ("If the individual plaintiff lacks standing, the court need never reach the class action issue.").

Second, even if Plaintiffs had standing, their testimony about what they did and did not rely on creates significant typicality and adequacy-of-representation concerns under Rule 23(a). Particularly for the PFAS Omission claims, Plaintiffs' testimony opens them to unique causation defenses rendering them atypical of the class they want to represent. On top of this, the two Plaintiffs seek a different measure of damages—full refund rather than price premium—than the class they purport to represent.

Third, there is no classwide way to establish a "duty to disclose," which means individualized questions of fact and law will predominate, spoiling certification under Rule 23(b)(3). When a duty to disclose arises is not a one-size-fits-all inquiry. *Hodsdon v. Mars, Inc.*, 891 F.3d 857 (9th Cir. 2018). If Smucker owed a duty to disclose the presence of PFAS in its packaging under *Hodsdon* turns on whether PFAS on the outside layer of Smucker's packaging "relates to an unreasonable safety hazard" or "goes to the central function of the product." *Id.* at 861–65; *see also In re Trader Joe's Co. Dark Chocolate Litig.*, 726 F.Supp.3d 1150, 1169 (S.D. Cal. 2024); *Erickson v. Kimberly-Clark Corp.*, No. 24-cv-07032-AMO, 2025 WL 2105830, at *4 (N.D. Cal. July 28, 2025). Plaintiffs try the "safety hazard" approach, but their expert admits that the extent to which PFAS in Smucker's packaging could impact pet food safety will vary across the class, with the possibility that some customers will not face *any* safety implications from PFAS migration. Dep. Tr. of Dr. Melinda Wilkins ("Wilkins Dep.") at 114:24–115:2 (Q. It's possible that

some animals might not have been exposed from pet – Smucker's pet food packaging to PFAS? A. Yep.") (Ruttinger Decl. Ex. D). Thus, the existence of a duty to disclose will *also* vary across the class. And where "a duty to disclose . . . may exist as to some, but not all, of the proposed class members"—then individualized issues predominate, precluding certification. *Oddo v. Arocaire Air Conditioning & Heating*, No. 8:15-cv-01985-CAS, 2020 WL 5267917, at *27 (C.D. Cal. May 18, 2020).

For these reasons, a class cannot be certified and the Court should deny Plaintiffs' Motion.

## II.    BACKGROUND

### A.    Plaintiffs Jeruchim and Vargas never read—let alone relied on—Smucker's product labeling.

The named Plaintiffs, Sandra Jeruchim and Melissa Vargas, are late entrants to this case. Robin Humphrey filed this lawsuit in November 2022 and sued Smucker. She alleged it misleadingly labeled three pet food brands—9Lives, Kibbles 'n Bits, and Meow Mix—as "healthful despite containing titanium dioxide," which she alleged is linked to known health problems in pets. She also challenged the use of PFAS in Smucker's packaging, alleging that "[r]esearchers have established with certainty that chemicals migrate from food contact articles onto food." Compl. [Dkt. 1] ¶ 38. That was before Plaintiffs' counsel knew that PFAS was applied only to the outside layer of Smucker's pet food bags.

After Humphrey passed away, Plaintiffs' counsel searched for new plaintiffs. [Dkt. 62] Sandra Jeruchim and Melissa Vargas responded to their advertisements and swapped into the lawsuit, but *made no changes* to the substantive allegations. Jeruchim and Vargas later testified that many of the allegations they adopted were untrue. Both admitted that they did *not* "review[] the labeling, packaging, and marketing materials" let alone "reasonably rel[y] on" them, as they alleged. Third Am. Compl. ("TAC") [Dkt. 63] ¶¶ 18–19, 22–23.

Jeruchim purchased Smucker's MeowMix cat food for her cat, Kit Cat, without first reading the packaging. Jeruchim Dep., 88:3–5 (Ruttinger Decl. Ex. B.) In fact, she did not "ever" pay "close attention to exactly what was on the packaging." *Id.* at 88:6–11. She did not look at the ingredients. *See id.* at 88:12–15. Nor did she look at "any of the slogans" on the bag. *Id.* at 88:16–19. Her decision to purchase MeowMix had *nothing* to do with anything Smucker wrote about the product on the bag:

TUCKER ELLIS LLP

Atlanta ◆ Chicago ◆ Cleveland ◆ Columbus ◆ Los Angeles ◆ Morristown, NJ ◆ Orange County ◆ San Francisco ◆ St. Louis ◆ Washington, D.C.

Q.    So there was nothing on the -- other than the picture of -- other than the picture of Kit Cat -- other than the picture of the cat on the bag which resembled your cat, there was nothing about the packaging on that cat food on the Meow Mix bag that led you to purchase it, correct?

A.    Correct.

*Id.* at 88:22–89:3. Even now, after bringing her lawsuit, she *still* does not read pet food packaging before purchasing it. *Id.* at 89:14–16. Only three factors ever influenced Jeruchim's purchase of MeowMix: (1) price, (2) familiarity with the MeowMix brand name, and (3) the image of the cat on the MeowMix package. *Id.* at 86:18–87:5.

Vargas shares a similar tale. She has numerous pets, for whom she purchased MeowMix, 9Lives, and Kibbles 'n Bits (among a variety of other products she has not sued over). *See* Vargas Dep., 23:19–21, 28:14–16, 30:10–31:4 (Ruttinger Decl. Ex. C). Her *only* consideration was price: "I just always bought what was the better deal." *Id.* at 60:15–18. She did not read—let alone rely on—anything else:

Q.    . . . [D]uring that period of time when you were purchasing the Meow Mix food, you selected food based on price. Did you read the labels before you purchased the food?

A.    No.

Q.    Look at any of the marketing materials before you purchased the food?

A.    No.

*Id.* at 89:23–90:7. And that includes the Health Claims:

Q.    As all products do, there's claims made on packaging of products on its performance. Did you read any of the claims on the outside of the Meow Mix food before you purchased it?

A.    No.

*Id.* at 90:8–12. Her testimony regarding her purchases of Kibbles 'n Bits and 9Lives products was no different. *Id.* at 90:13–91:20.

Now, at the class certification stage, Jeruchim and Vargas submit declarations that stop just short of contradicting their testimony. Jeruchim now says that "[w]hen making any purchase, I typically look at pictures and read any text that appears relevant to my purchase decision." Jeruchim Decl. [Dkt. 86-5] ¶ 5. But that was not the case when she purchased MeowMix. Jeruchim Dep., 88:6–89:3. (Ruttinger Decl., Ex. B.) Vargas now declares that she "looked at the product packaging" when she bought Kibbles 'n Bits (curiously, no mention of MeowMix or 9Lives), but she only saw "a picture of a happy dog" and "the price." Vargas Decl. [Dkt. 86-6] ¶ 6. "Looked at" is different from "read," let alone "relied on," which she did not do. Vargas Dep., 89:23–91:20 (Ruttinger Decl. Ex. C).

**B.    During the Class Period, Smucker sold pet food in multi-walled bags containing a PFAS component in the outside layer.**

Until about 2023, Smucker used a "PFAS component on the print sheet" of certain pet food products, particularly those sold in multi-walled bags. Stefanescu Dep., 23:12 (Ruttinger Decl. Ex. A). This was not part of Smucker's pet food design, but that of its *pet food package*, the paper for which was manufactured by Sappi, which supplied paper for packaging across the pet food industry. *Id.* at 48:23–49:3. Smucker's multi-walled bags have at least three layers: an outer layer, inner layer(s), and a plastic food-contact layer on the inside. Decl. of Amy Stefanescu, ("Stefanescu Decl.") ¶¶ 4–6. The "print sheet" is the "outer paper layer" and it is *that* layer that had a PFAS component. Stefanescu Dep., 46:8–15 (Ruttinger Decl. Ex. A). That is, the "component of the packaging that contained PFAS was applied to the outside layer" of the bags, with "ink and a clearcoat" applied over it. Stefanescu Decl. ¶ 6; *see also* Stefanescu Dep., 46:8–18; 49:24–50:8 (Ruttinger Decl. Ex. A). Its purpose was grease resistance. *Id.* at 49:24–50:1.

Smucker—and the industry as a whole—began transitioning away from using paper that contained a PFAS print layer. *Id.* at 48:23–49:7. This change was prompted by Sappi stopping production of *all paper*, including those that may have contained PFAS, in March 2022. *Id.* at 48:23–49:3; 52:13–18. Sappi's decision was the result of certain states banning the use of PFAS in food packaging. *Id.* at 52:5–17. Smucker was aware of this shifting regulatory landscape. *Id.* at 23:13–18. Smucker tested and ultimately rolled out new product packaging that does not intentionally include a PFAS coating on the print layer. *See* Stefanescu Decl. ¶ 8. While Plaintiffs play up the notion that Smucker wanted to keep

5

TUCKER ELLIS LLP

Atlanta ♦ Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ Morristown, NJ ♦ Orange County ♦ San Francisco ♦ St. Louis ♦ Washington, D.C.

using PFAS packaging for some nefarious purpose, the reality was that it simply wanted to ensure that its customers could still purchase the products their pets enjoyed. Smucker "wanted to have enough paper to meet [its] forecast and to build up the inventory of the new or alternate bags" to keep "product on the shelf." Stefanescu Dep., 80:23–81:4 (Ruttinger Decl. Ex. A). Smucker began ordering only PFAS-non-intent packaging in August 2022. Stefanescu Decl. ¶ 8; These new bags went onto the market in 2023. Stefanescu Dep., 54:8–19 (Ruttinger Decl. Ex. A). The transition was therefore completed before Defendant Post Consumer Brands acquired the 9Lives and Kibbles 'n Bits brands in April 2023. *See* TAC [Dkt. 63] ¶ 26. Plaintiffs never mention Post in their class certification brief, let alone argue that Post is liable to their proposed class, which ends several months before Post acquired 9Lives and Kibbles 'n Bits.

Smucker does not dispute that PFAS was used in certain packaging for some pet food products. But "PFAS is not included" in the pet food itself; it is not an intentional ingredient. Stefanescu Dep., 22:20 (Ruttinger Decl. Ex. A). What is more, the print sheet that contained PFAS was not used in packaging for all the "Products" that Plaintiffs identified in their Third Amended Complaint.[2] And the layer of Smucker's packaging that contained PFAS was on the outside, not the inside. Wilkins Dep., 120:13–16 ("Q. [D]o you know which layer the PFAS is contained in the Smucker's pet food packaging? A. From one of the exhibits, it looked like it was on the outside.") (Ruttinger Decl. Ex. D).

**C.    To certify the class they seek, Plaintiffs must show that their PFAS Omissions theory can be adjudicated classwide.**

This is a pure omissions case, despite Plaintiffs' continued reference to "Health Claims" on Smucker's pet food packaging. *See, e.g.*, Pls' Mot. [Dkt. 86] at 7:13, 8:14; TAC [Dkt. 63] ¶¶ 49–53. Indeed, Plaintiffs lack standing to challenge the Health Claims at all, given their unequivocal testimony that neither read nor relied on any Health Claim. It is thus unsurprising that Plaintiffs' sole focus in their class certification motion is on Smucker's failure to "warn consumers of the PFAS in the packaging." Pls.' Mot. [Dkt. 86] 4:16–17. Likewise, Plaintiffs' own expert, Steven Gaskin, confirms that Plaintiffs' theory is omission-centric: "Defendants nowhere inform consumers that the Products contain, or risk containing,

---

[2] To that end, Plaintiffs have now tailored the products to only dry food. *See* Pls.' Mot. for Class Cert. [Dkt. 86] 14:22–25; *see also* Fisher Decl. Ex. 2 [Dkt. 86-1] at 42–43.

DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

3:22-CV-06913-WHO

PFAS." Expert Report of Steven P. Gaskin ("Gaskin Report") [Dkt. 86-2] ¶ 9 (citing TAC [Dkt. 63] ¶ 13). Indeed, Mr. Gaskin—who Plaintiffs tasked with surveying consumers for this litigation—focused *only* on "estimat[ing] the price premia, if any, . . . due to the *PFAS omission*." *Id.* ¶ 12 (emphasis added); *see also* Dep. of Steven Gaskin, 58:1–11 ("[I]n terms of the estimate I'm providing, that's the price premium solely due to the failure to disclose the PFAS omission.") (Ruttinger Decl. Ex. E).

## III.    LAW AND ARGUMENT

### A.    Legal Standard.

Federal Rule of Civil Procedure 23 is not "a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A plaintiff seeking certification must "affirmatively . . . prove" that Rule 23's requirements are met. *Id.* This burden means satisfying all four parts of Rule 23(a) and "at least one of the requirements" of Rule 23(b). *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011) (citations omitted). To the extent this implicates the merits, "a district court *must* consider the merits if they overlap with the Rule 23[] requirements." *Id.* at 981 (citing first *Dukes*, 564 U.S. at 349–52, then *Hanlon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992)).

### B.    This Court cannot reach class certification because Plaintiffs Jeruchim and Vargas lack standing.

#### 1.    Plaintiffs lack Article III standing.

Article III standing is a "threshold matter" that "the plaintiff class bears the burden" of proving. *Ellis*, 657 F.3d at 978 (cleaned up). At class certification, Article III's requirements are "not mere pleading requirements," but must be shown "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The Ninth Circuit has long held that in the context of a proposed class action, the named plaintiffs must establish standing *before* the court may proceed further. *NEI Contracting*, 926 F.3d at 532 ("If the individual plaintiff lacks standing, the court need never reach the class action issue."); *see also Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) ("[O]ur law makes clear that 'if none of the named plaintiffs purporting to represent a class establishes the requisite case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.'").

DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION
3:22-CV-06913-WHO

To have Article III standing, Plaintiffs "must demonstrate three elements: (1) an 'injury in fact,' (2) a 'causal connection between the injury and the conduct complained of,' and (3) that it is 'likely . . . that the injury will be redressed by a favorable decision.'" *Anderson v. Apple Inc.*, 500 F.Supp.3d 993, 1005 (N.D. Cal. 2020) (citation omitted). An injury in fact must be both "concrete and particularized" and "actual or imminent," as opposed to "conjectural or hypothetical." *Id.* To show a causal connection, the injury must be "fairly traceable" to the challenged conduct. *Id.*

In *Anderson*, this Court summed up Article III standing in "claims involving misrepresentations to consumers" as requiring plaintiffs to show they "'actually relied' on an allegedly misleading statement." *Anderson*, 500 F.Supp.3d at 1005. That is because "a consumer's injury cannot be 'fairly traceable' to the defendant's alleged misrepresentation unless the consumer actually relied on that misrepresentation." *Id.* But Plaintiffs cannot use the usual path to satisfy Article III standing. Jeruchim and Vargas cannot show actual reliance; they *did not rely* on any statements on Smucker's packaging. *See* pages 3–5, *supra*. Vargas focused on price alone; Jeruchim looked at price, knew the brand from television, and thought the cat on MeowMix label looked like hers. *See id*. Neither read—let alone relied on—the Health Claims. Vargas Dep., 90:8–12 (Ruttinger Decl. Ex. C); Jeruchim Dep., 88:3–89:3 (Ruttinger Decl. Ex. B). They therefore lack Article III standing to challenge Smucker's Health Claims.

Plaintiffs also lack Article III standing as to the PFAS Omission because they cannot articulate a "concrete and particularized" or "actual or imminent" injury in fact. The injury to which Plaintiffs point seems to be "the undisclosed presence of PFAS" in product packaging. Pls.' Mot. [Dkt. 86] 14:13–14. But that has nothing to do with what Plaintiffs bargained for when they purchased pet food. Neither Plaintiffs nor their experts hypothesize that the makeup of the pet food packaging is material to consumers. So the injury must be something else more related to the consumer's purchase decision: either that PFAS in the packaging migrates *to the food* itself, or that there is a *risk* of migration occurring. But those two injuries, migration or a risk of it, are hypothetical and conjectural. And if PFAS migration does not occur, then consumers generally—and Plaintiffs, specifically—got what they paid for.

Plaintiffs have no evidence that PFAS migration occurred with respect to any of products they purchased, let alone that it happened classwide. They apparently never tested Smucker's packaging for

TUCKER ELLIS LLP

Atlanta ♦ Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ Morristown, NJ ♦ Orange County ♦ San Francisco ♦ St. Louis ♦ Washington, D.C.

TUCKER ELLIS LLP

Atlanta ◆ Chicago ◆ Cleveland ◆ Columbus ◆ Los Angeles ◆ Morristown, NJ ◆ Orange County ◆ San Francisco ◆ St. Louis ◆ Washington, D.C.

PFAS migration—and they certainly did not allege it.[3] And Dr. Wilkins, the expert Plaintiffs retained to opine that PFAS migration occurs, does not know if PFAS can migrate from the outer layer of a multi-walled bag into food. *See* Wilkins Dep., 51:24–52:20 (Ruttinger Decl. Ex. D). She is "not a packaging expert," *id.* at 64:11–16, and her migration opinions are mostly based on articles that studied migration through direct food contact (think hamburger wrappers). She did not consider, rely on, or find any studies that "addressed migration potential when a PFAS layer does not come in direct contact with food." *Id.* at 65:7–12. Out of all of the PFAS migration research she reviewed, only one article involved multi-walled pet food packaging, and it was not designed "to see if [PFAS] could go through multiple layers." *See id.* at 46:7–17. Therefore, "[w]e don't know" the PFAS migration risk "specific for Smucker's packaging." *Id.* at 75:10–11; 64:21–22 ("[w]e don't know the extent of the risk."). Either way, she explains that if PFAS migration occurs in Smucker's bags, it is "based on individualized packaging" and "the storage conditions and temperature and time." *Id.* at 75:17–21.

In short, the PFAS migration risk Dr. Wilkins opines about is an untested hypothesis, which neither she nor Plaintiffs can quantify. It falls far short of a "concrete and particularized" or "actual and imminent" injury.

### 2. Plaintiffs lack statutory standing.

#### a) Plaintiffs did not rely on any claim on product packaging.

Even if Plaintiffs could articulate a "concrete" injury, their lack of reliance still disqualifies them from statutory standing under the CLRA, FAL, and UCL. This "standing" is "distinct" from Article III. *Corbett v. Pharmacare U.S., Inc.*, 544 F.Supp.3d 996, 1005 (S.D. Cal. 2021). Because the same standard for fraudulent activity governs the CLRA, FAL, and UCL, they are assessed together. *See James v.*

---

[3] Plaintiffs allege that a third-party study (which they do not provide a citation for) showed "named PFAS" in two Smucker products (TAC [Dkt. 63] ¶¶ 39–43), but that is not enough at the pleading stage, let alone class certification, *Dalewitz v. Procter & Gamble Co.*, No. 7:22-cv-07323 (NSR), 2023 WL 6215329, at *3 (S.D.N.Y. Sept. 22, 2023) (observing that claims under N.Y. G.B.L. § 349 fail because they were based on "unsubstantiated" testing and because the plaintiffs did not allege the "testing methodology" or "date, time, or place of testing"). It is unclear from Plaintiffs' allegations whether this test tried to measure PFAS in packaging or in food itself. Either way, it does not appear to have measured *migration*. And Plaintiffs' PFAS expert, Dr. Wilkins, confirmed that she did not "review any specific batches of Smucker's packaging" or any other competitor packaging. Wilkins Dep., 74:18–75:3 (Ruttinger Decl. Ex. D).

*Chocmod USA Inc.*, 773 F.Supp.3d 945, 951–53 (E.D. Cal. 2025). To have statutory standing, a plaintiff must have actually relied on the alleged misrepresentation or omission. *Gagetta v. Walmart, Inc.*, 646 F.Supp.3d 1164, 1175–76 (N.D. Cal. 2022) (plaintiffs "plausibly alleged reliance" because they "saw, read, and understood the products' labels before purchasing" and "relied on" the "omission of the risk of heavy metals in making their purchases"); *In re iPhone Application Litig.*, 6 F.Supp.3d 1004, 1012–13 (N.D. Cal. 2013) ("Plaintiffs must point to specific facts indicating that [they] actually saw the misrepresentations about which they complain[.]"). A plaintiff must also "demonstrate that the misrepresentation or omission was an immediate cause of the injury-causing conduct." *Sud v. Costco Wholesale Corp.*, 229 F.Supp.3d 1075, 1083 (N.D. Cal. 2017), *aff'd,* 731 F. App'x 719 (9th Cir. 2018) (cleaned up). The "misrepresentation or omission" must have been "a substantial factor" in the purchasing decision. *Id.* For omissions, a plaintiff must prove two "sub-elements"—awareness and a change in behavior. *Id.* (citing *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225–26 (9th Cir. 2015)). A change in behavior "may be presumed if the omission was material," but a plaintiff must still "show she would have been aware of the information if it had been disclosed." *Id.* (citation omitted).

Plaintiffs bear the burden of proving reliance and are not entitled to a presumption of it. They fall well short. Jeruchim and Vargas testified that they did *not* read any of Smucker's labeling or packaging materials. *See* pages 3–5, *supra*. They therefore admit their alleged injury does not "arise from reliance on" the Health Claims and they would not have been aware of a statement regarding PFAS had it been there. As a result, Jeruchim and Vargas lack statutory standing to pursue the CLRA, FAL, and UCL claims.

> **b)      There is no presumption of reliance for the proposed class because the claims and omissions were not material.**

Plaintiffs' own lack of reliance should be dispositive, but Smucker nevertheless addresses Plaintiffs' attempt to rely on a presumption of class-wide reliance built on "materiality" arguments. True, "reliance may be inferred as to the entire class if the representations were material," but that is *only* when the Plaintiffs can first establish reliance themselves. *See In re JUUL Labs., Inc., Mktg. Sales Pracs. & Prods. Liab. Litig.*, 609 F.Supp.3d 942, 986–87 (N.D. Cal. 2022) ("[A]s long as named plaintiffs are able to demonstrate reliance . . . that caused them injury, a presumption of reliance arises on behalf of all class members."). They cannot. Neither the Health Claims nor the PFAS Omission were material to Plaintiffs

TUCKER ELLIS LLP

Atlanta ♦ Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ Morristown, NJ ♦ Orange County ♦ San Francisco ♦ St. Louis ♦ Washington, D.C.

because neither Jeruchim nor Vargas read the packaging, period. *See* pages 3–5, *supra*. Plaintiffs *could not* have been aware of the Health Claims without reading them. And, if the PFAS Omission *had* been disclosed, they would not have seen it, and so would not have acted any differently.

As for the proposed class, a misstatement or omission is "material if a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F.Supp.3d 625, 766 (C.D. Cal. 2022) (as to omissions); *Townsend v. Monster Beverage Corp.*, 303 F.Supp.3d 1010, 1029 (C.D. Cal. 2018) (as to misstatements).

Plaintiffs attempt to establish classwide materiality only for the PFAS Omission, largely through their expert, Steven Gaskin. Gaskin's engagement was limited to designing and executing two market research surveys about "the PFAS omission." Plaintiffs argue that Mr. Gaskin concluded that *both* the "PFAS Omission" and "Health Claims" are "material to reasonable consumers," but that is not accurate. Mr. Gaskin admitted to only trying to measure the former. *See* Corrected Report of Steven P. Gaskin [Dkt. 91] ¶ 10 (under seal) ("███████████████████████████████████████████████████ ████████████████████████████████████████████████████████"). His damages model tracks this limited engagement: "█████████████████████████████████████████ ██████████████████████████████████." *Id.* ¶ 60. Additionally, his ultimate conclusions only account for "the PFAS omission." *Id.* ¶ 66. It is the only thing he measured. Gaskin Dep., 58:9–11 (Ruttinger Decl. Ex. E).

Plaintiffs try to backstop their materiality assertions by citing Section 109000 of the California Health & Safety Code. But this section does not plainly apply to pet food products or pet food packaging. Pls.' Mot. [Dkt. 86] 9:20–10:18. The statute defines "food packaging" as "a nondurable package, packaging component, or food service ware" intended to contain "food, foodstuffs, or beverages." Cal. Health & Safety Code § 109000(a)(1). But elsewhere the Health and Safety Code defines "food" as things "intended for use or for sale in whole or in part for *human consumption*." Cal. Health & Safety Code § 113781 (emphasis added). "Foodstuffs" is not defined, but in context it should only apply to items relative to *human* consumption as well. *E.g.*, *Yates v. United States*, 574 U.S. 528, 543 (2015) ("a word is known

DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION

TUCKER ELLIS LLP

Atlanta ♦ Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ Morristown, NJ ♦ Orange County ♦ San Francisco ♦ St. Louis ♦ Washington, D.C.

by the company it keeps," which avoids "ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress.").

Moreover, the statute only applies to PFAS that are "added to a product and that have a functional or technical effect *in the product*" or when PFAS is in a "product component at or above 100 parts per million, as measured in total organic fluorine." Cal. Health & Safety Code § 109000(a)(3)(A)–(B). PFAS is not "added to" Smucker's pet food products for a "functional or technical effect." Stefanescu Dep., 22:20 ("PFAS is not included in the product.") (Ruttinger Decl. Ex. A). And neither Plaintiffs nor their experts tested any Smucker pet food products (or packaging) to determine whether there are fluorine levels in excess of 100 parts per million.

Finally, Plaintiffs simply cannot graft Section 109000 into case law about affirmative misrepresentations to make their point. *See* Pls' Mot. at 6–7. *Hinojos* involved "misleading advertising" about "reduced prices," which the court classified as "fake sales." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013). *Kwikset* similarly involved affirmative misrepresentations about "Made in U.S.A." *Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 890 (Cal. 2011). *Hansen* dealt with "fictitious former price information" that consumers saw when making purchases online. *Hansen v. Newegg.com Americas, Inc.*, 25 Cal. App. 5th 714, 720 (Cal. Ct. App. 2018). And *Brown* involved "organic-content representations." *Brown v. Hain Celestial Grp., Inc.*, No. 11-cv-03082-LB, 2015 WL 3398415, at *5 (N.D. Cal. May 26, 2015). Neither the statute nor Plaintiffs' legal support suggests that a "PFAS Omission" is material.

Plaintiffs also cherry-pick statements from Smucker's internal documents to create an aura of materiality that does not exist. True, the November 2022 email about "██████████████" after "████ ██████████████" was mentioned "██████████████" exists. Fisher Decl., Ex. 23, SMUCKER_JERUCHIM_008661 (under seal). Yet, Smucker received only "████████████ ████████" and "███████████████████████████████████████ ██████████████████████." *Id.* Other emails clarify that Smucker's concern was related to whether "food *contact* packaging" contained PFAS. *See, e.g.*, Fisher Decl. Ex. 19, SMUCKER_ JERUCHIM_019985–86 (emphasis added). For pet food packaging, it did not. *See* pages 5–6, *supra*. There is nothing to indicate this email was sent in response to *customer* concerns or that it was a material issue; rather it was a supply-side inquiry that Smucker made preemptively because of changing state

TUCKER ELLIS LLP

Atlanta ♦ Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ Morristown, NJ ♦ Orange County ♦ San Francisco ♦ St. Louis ♦ Washington, D.C.

regulations. *Id.* at SMUCKER_JERUCHIM_019985 ("Several other states are working on similar legislation with even earlier deadlines for removal" and "[i]t would be prudent to assess whether or not we have packaging that contains PFAS as soon as possible"). The only portion of this communication that could be tied to materiality concerns from consumers was a generic statement from a prior message that said Smucker was "already starting to get some questions" from "consumers and customers." *Id.*

At bottom, Plaintiffs focus solely on the materiality of the PFAS Omission. But nothing Plaintiffs point to suggests that information was "material" to them. *Oddo*, 2020 WL 5267917, at *27.

### C. Plaintiffs are atypical, inadequate class representatives.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Rule 23(a)(4) ensures "the representative parties will fairly and adequately protect the interests of the class." These inquiries "tend to merge." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

Typicality requires that "the claims of the putative class must be 'fairly encompassed by the named plaintiff's claims.'" *Mazur v. eBay Inc.*, 257 F.R.D. 563, 568 (N.D. Cal. 2009) (quoting *Falcon*, 457 U.S. at 156). When a proposed class representative is subject to unique defenses, they may not be typical. *See Hanlon*, 976 F.2d at 508. In CLRA/FAL/UCL cases, a plaintiff that was not deceived is necessarily atypical. *See Jones v. ConAgra Foods, Inc.*, No. C 12-01633 CRB, 2014 WL 2702726, at *7 (N.D. Cal. June 13, 2014) (citing *Stearns v. Ticketmaster, Corp.*, 655 F.3d 1013, 1019–20 (9th Cir. 2011) (a proposed representative who "never saw the site or signed up for the program" is inadequate).

Plaintiffs are not typical of the class they seek to represent. They didn't seek out representation to bring this lawsuit; Plaintiffs' counsel found *them*. The allegations in the Third Amended Complaint are not theirs; they adopted them, only to contradict them when deposed. Now, after testifying that they did *not* read or rely on the Health Claims, Plaintiffs pivot to a harder-to-prove omission-based theory. This makes them vulnerable to unique defenses, which puts them "in a different position from the rest of the putative class." *Mazur*, 257 F.R.D. at 569. Rather than pursuing an affirmative misrepresentation theory, the "Health Claims" that were the focus of their pleadings now merely serve as a prelude to the "PFAS Omission" overture. Finally, Plaintiffs seek different recovery than the rest of the class they want to represent; Plaintiffs want a full refund, but only seek a price premium differential for the putative class.

Atlanta ♦ Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ Morristown, NJ ♦ Orange County ♦ San Francisco ♦ St. Louis ♦ Washington, D.C.

TUCKER ELLIS LLP

*Compare* Pls.' Mot. [Dkt. 86] 15:12–13 ("Plaintiffs paid 100% more . . . than they would have" otherwise) *with id.* at 25:19 ("class members paid a premium"). Their expert, Mr. Gaskin, only measured a price premium theory of recovery. Gaskin Dep., 57:17–58:11 (Ruttinger Decl. Ex. E). Plaintiffs seem okay with leaving "full refund" off the table for the class, so long as they can have their certified class and *they* get a full refund.

Beyond being atypical of the class, Plaintiffs are not adequate representatives for this suit. "To determine whether" adequacy is satisfied, courts "ask two questions: (1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously and on behalf of the class." *Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003) (citations omitted). Regardless of who found who, Smucker and Post do not contest the adequacy of counsel.

Jeruchim's and Vargas's involvement in this case, and whether they will actively pursue it, is another question. "The threshold of knowledge required to qualify as a class representative is low; a party must be familiar with the basic elements of her claim . . . , and will be deemed inadequate only if she is startlingly unfamiliar with the case." *Gamino v. KPC Healthcare Holdings, Inc.*, No. 5:20-cv-01126-SB-SHK, 2022 WL 1043666, at *2 (C.D. Cal. Apr. 5, 2022) (quoting *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 611 (N.D. Cal. 2004)). Jeruchim and Vargas seem "startlingly unfamiliar" with this case. Both were replacement plaintiffs whom Plaintiffs' counsel solicited on Facebook and Craigslist. *See* Jeruchim Dep., 50:20–52:5 (Ruttinger Decl. Ex. B); Vargas Dep., 94:21–96:1 (Ruttinger Decl. Ex. C). Jeruchim did not read the Third Amended Complaint before signing on as a plaintiff. Jeruchim Dep., 53:1–7 (Ruttinger Decl. Ex. B). Vargas at least "skimmed through it," but found it "confusing" because it looked the same as everything else. Vargas Dep., 13:24–14:11 (Ruttinger Decl. Ex. C). Vargas did not, however, read her interrogatory responses. *Id.* at 89:7–18. This lack of involvement, interest, or understanding of what this case was, or is, about means neither Jeruchim nor Vargas are adequate to serve as class representatives.

**D.     Individualized questions "predominate over" questions common to Plaintiffs' omissions-based liability theory.**

Even if Plaintiffs Jeruchim and Vargas had standing and could meet the initial Rule 23(a) prerequisites, they cannot meet the more demanding standard for certification of a damages class under

Rule 23(b)(3). To do so, Plaintiffs need to show that common questions of both fact *and law* "predominate" over individualized ones. They cannot make that showing.

Plaintiffs' predominance arguments rely on the wrong law. Plaintiffs cite courts that have certified classes where "individual reliance" can be inferred classwide from the existence of "objectively material" representations. Pls' Mot. [Dkt. 86] at 21:18–23. But that is not the case here. Plaintiffs argue that "reliance may be inferred as to the entire class if the representations were objectively material," but that is *only* when the Plaintiffs can first establish actual reliance themselves. *See In re JUUL Labs, Inc.,* 609 F.Supp.3d at 986–87 ("[A]s long as named plaintiffs are able to demonstrate reliance . . . that caused them injury, a presumption of reliance arises to on behalf of all class members."). Here, where Plaintiffs *never read* (let alone relied on) Smucker's labeling, reliance cannot be presumed classwide. Instead, Plaintiffs' class certification request must be assessed through the omissions lens, beginning with the California law required to prove an omissions-based false advertising theory. *Erica P. John Fund, Inc. v. Halliburton Co.*, 536 U.S. 804, 809 (2011) ("Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action.").

What matters in an omissions-only class is whether a "duty to disclose" can be proven classwide. Plaintiffs, however,  fail to even mention the leading Ninth Circuit case governing the existence of a duty to disclose—*Hodsdon v. Mars, Inc.*, 891 F.3d 857 (9th Cir. 2018). So the correct question to ask under the Rule 23(b)(3) "predominance" test is whether Plaintiffs can show the existence of a "duty to disclose" under *Hodsdon* with common classwide evidence. If they cannot—if "a duty to disclose . . . may exist as to some, but not all, of the proposed class members"—then individualized issues predominate, precluding certification. *Oddo*, 2020 WL 5267917, at *27.

The test for whether a duty to disclose exists is not a one-size-fits-all inquiry. Whether Smucker owed a duty to disclose the presence of PFAS in its packaging to any particular class member turns on several individualized consumer- and pet-specific issues. *Hodsdon* and its progeny identify three scenarios where a company's omission of a fact about its product gives rise to a duty to disclose. A duty to disclose may exist where the alleged omission is "contrary to a representation actually made by the defendant." *Hodsdon*, 891 F.3d at 861. When that is not the case, a duty to disclose arises only "when either (1) the defect at issue relates to an unreasonable safety hazard or (2) the defect is material, central to the product's

15

function, and the plaintiff alleges one of the four *LiMandri* factors." *Erickson*, 2025 WL 2105830, at *4 (citing *In re Trader Joe's*, 726 F.Supp.3d at 1169); *see also, e.g.*, *Hammerling*, 615 F.Supp.3d at 1085 (same); *Lopez v. Mead Johnson Nutrition Co.*, No. 24-cv-03573-HSG, 2025 WL 895213, at *7 (N.D. Cal. Mar. 24, 2025).

The first *Hodsdon* category is off the table; Plaintiffs concede Smucker's label says nothing about PFAS, so there is nothing for Smucker's omission to contradict. Therefore, whether Smucker owed a duty to any particular putative class member will depend on whether PFAS in the Class Products' packaging posed a safety hazard or was a material fact that affected the Class Products' "central function." Either way, the answer to that question depends on individualized consumer- and pet-specific variables that make the duty to disclose impossible to resolve classwide.

### 1. Because Smucker does not label its products as "PFAS Free," Plaintiffs cannot rely on a classwide duty to disclose an omission contrary to a representation made.

The first scenario in which a duty to disclose arises under California law does not apply. In *Hodsdon*, the Ninth Circuit explained that omissions may be actionable under California law where they are "contrary to a representation actually made by the defendant." *Hodsdon*, 891 F.3d at 861. But no one— not Plaintiffs, not Mr. Gaskin, and not any of Plaintiffs' other experts—argues that Smucker's PFAS omission is contrary to a representation Smucker made on its labeling or in its advertising. On the contrary, Plaintiffs' whole theory is built on the allegation that Smucker knew about PFAS in its packaging *and said nothing*.

This exact issue came up in *Erickson*, another PFAS-focused case filed by Plaintiffs' counsel in this district. There, the plaintiffs alleged that Kimberly-Clark failed to disclose the presence of PFAS in its baby wipes, and the court addressed this first *Hodsdon* scenario head-on:

> Plaintiffs argue omission claims based on both theories, namely that Defendant's omission of the PFAS content in the baby wipes was contrary to its representations, and separately, it was obligated to disclose that information. Plaintiffs do not allege the wipes were labeled "PFAS-free," and for the reasons stated in the court's analysis of the misrepresentation claims, the presence of PFAS is not contrary to labeling that the wipes are "plant-based" or "gentle." Therefore, Plaintiffs have not plausibly stated an

DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION FOR CLASS CERTIFICATION
3:22-CV-06913-WHO

TUCKER ELLIS LLP

Atlanta ♦ Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ Morristown, NJ ♦ Orange County ♦ San Francisco ♦ St. Louis ♦ Washington, D.C.

TUCKER ELLIS LLP

Atlanta ♦ Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ Morristown, NJ ♦ Orange County ♦ San Francisco ♦ St. Louis ♦ Washington, D.C.

omission claim "contrary to a representation actually made by the defendant."

*Erickson*, 2025 WL 2105830, at *4 (cleaned up). The same is true here; Plaintiffs do not allege—and have no evidence—that the presence of PFAS in Smucker's packaging contradicts *any* of the claims made on the Class Products' labels. Plaintiffs have not advanced this argument, and for good reason. They took no discovery about *how* the claims on product packaging are created, what veterinary science or formulation combination substantiates them, and the industry regulations that govern those claims. What is more, Plaintiffs cannot show a contradiction because they have no expert opinion that the presence of PFAS in packaging renders any particular statement in need of more fulsome disclosure. And finally, again, Plaintiffs never read any of these statements to begin with. Thus, this first scenario does not provide a path to resolve the existence of a classwide duty to disclose.

**2.    Any attempt to tie a duty to disclose to allegations that PFAS in the Class Products' packaging poses a "safety hazard" stumbles over individualized issues.**

Plaintiffs do not allege Smucker owes a duty to disclose based on the risk that PFAS in the Class Products' packaging poses a "safety hazard." Even if they did, their own expert's opinions confirm that the "safety" implications for PFAS in pet food packaging turn on a series of individualized consumer- and pet-specific variables.

Begin with the question of whether Smucker's use of PFAS in its packaging *can* pose a safety risk. For a disclosure duty to arise in this scenario, the safety risk must be "unreasonable." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1029 (9th Cir. 2017). Further, that risk "must describe more than merely conjectural or hypothetical injuries." *Grausz v. Hershey Co.*, 713 F. Supp. 3d 818, 827 (S.D. Cal. 2024) (cleaned up). Plaintiffs lack any evidence that the PFAS Omission rises to this level of significance even in a generalized way, let alone that the risk rises to a "safety hazard" level for all members of the class. Again, Smucker's packaging contained PFAS only in the *outside* layer of its multi-walled bags. *See* page 5, *supra*. For any safety risk to arise, the PFAS must be able to "migrate" from that outside layer, through one or two middle layers, then through the plastic food-contact layer and finally into the food itself.

Plaintiffs offer Dr. Wilkins to opine on the alleged safety risk of PFAS migration, but nothing in her testimony makes this an issue the court can resolve classwide. She does not know whether PFAS can migrate from the outer layer of a multi-walled bag into food. Wilkins Dep., 51:24–52:20 (Ruttinger Decl. Ex. D). She is "not a packaging specialist" and "did not specifically look at the migration from one paper -- piece of paper to another piece of paper." *Id.* at 52:8–20. She has no familiarity with Smucker's specific multi-layered packaging design from which she can assess migration risk. *Id.* at 71:13–16; 72:7–12. She is also not a "migration" expert. *Id.* at 42:14–15. While she believes PFAS migration occurs, her only support for that opinion is the articles she relied on in creating her declaration. *Id.* at 44:17–21. Of the approximately twenty articles she cites, only a couple mention "migration," and only one—the Zabaleta article—involved pet food packaging. *Id.* at 46:7–17. Dr. Wilkins calls Zabaleta the "most analogous" study, *id.* at 45:12–16, but admits it involved only a two-layered bag unlike the multiple layers involved in Smucker's products, *see id.* at 55:17–23. More importantly, Dr. Wilkins conceded that the Zabaleta article only addressed potential PFAS migration *from the food contact layer*, not from an outside layer. *Id.* at 56:5–57:8. She therefore lacks *any* foundation for opining on a risk of PFAS migration from the outside layer of a multi-walled bag, through other layers, into pet food.

Dr. Wilkins nevertheless suspects PFAS could migrate into Smucker's pet food, although she admits "[w]e don't know the extent of the risk," either generally or specific to "in Smucker's bags." *Id.* at 64:21–22; 75:10–11. Importantly, she agreed that to the extent migration occurs and has safety implications, the extent to which it occurs varies based on individual consumer behaviors, including the "temperature" at which it is stored, "the length of time that it's stored in contact with the paper," not to mention the "type of packaging," the "type of PFAS," and the "fat content or other actual. . . matrix of the food itself." *Id.* at 83:20–84:12. Bag size is also a relevant factor because that was correlated—in her mind—to "how long" the pet food "stay[s] in the bag, along with storage conditions. *Id.* at 59:11–16; 60:11–13. "All those factors would impact the rate of migration and quantity of migration," if there were any. *Id.* at 84:7–8. Dr. Wilkins also conceded that for some consumers, there may be no migration at all. *See id.* at 114:7–115:2.

In short, Dr. Wilkins at most describes PFAS migration as a conjectural risk that might not affect all members of Plaintiffs' proposed class—short of the certain and "unreasonable" risk that gives rise to

18

TUCKER ELLIS LLP

Atlanta ♦ Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ Morristown, NJ ♦ Orange County ♦ San Francisco ♦ St. Louis ♦ Washington, D.C.

a duty to disclose under *Williams*. 851 F.3d at 1029. Her admitted uncertainty as to the "extent of the risk" makes her concerns more like the "merely conjectural or hypothetical injuries" described in *Grausz*. 713 F.Supp.3d at 827. And, at best, her testimony confirms that the extent to which PFAS in the Smucker packaging poses a "safety hazard" will vary across the class, underscoring why there is no classwide way to prove that PFAS migration—*if* it occurs—poses a safety hazard triggering a duty to disclose. Those variations preclude certification of a class based on a duty to disclose a "safety hazard" under *Hodsdon*. *Oddo*, 2020 WL 5267917, at *27.

### 3.    Plaintiffs cannot rely on the *Hodsdon* "central function" test to create a classwide duty to disclose.

The last route to establishing a classwide duty to disclose under *Hodsdon*—the "central function" test—also fails Plaintiffs. Assume PFAS migration happens; Plaintiffs still must show that Smucker's omission was "central to the product's function."[4] *In re Trader Joe's*, 726 F.Supp.3d at 1169 (cleaned up). Individualized issues crop up here too.

Again, *Erickson* is instructive: "a defect goes to the central functionality of a product when it prevents the product from performing a critical or integral function, or renders the product incapable of use." 2025 WL 2105830, at *5 (cleaned up). This is not about "subjective preferences of a product, but rather the effect on a core function of the product." *Id.* The core function of pet food is clear; it is to feed the pet. Plaintiffs do not allege, let alone prove, that the presence of PFAS in Smucker's packaging prevented them from feeding their pets. *See* Jeruchim Dep., 55:12–14 (MeowMix probably "filled [KitCat's] tummy") (Ruttinger Decl. Ex. B); Vargas Dep., 74:8–75:18 (confirming that her pets' nutritional needs were met by MeowMix, 9Lives, and Kibbles n' Bits) (Ruttinger Decl. Ex. C). While Plaintiffs argue exposure to PFAS can be harmful to the pets eating that food—although they never specify at what level—"concerns about a product's safety differ from effects on its central function, and indeed

---

[4] The *LiMandri* factors, which are only relevant if a *Hodsdon* factor is satisfied, are not at issue. They are: (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; or (4) the defendant makes material representations but also suppresses some material facts. *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (Cal. Ct. App. 1997).

comprise a separate theory of omission, i.e., the unreasonable safety hazard theory." *Erickson*, 2025 WL 2105830, at *5. Even if those safety concerns *could* go to the "central function" theory, the fact that the degree of safety risk (if any) varies among consumers precludes any attempt to use the "central function" test to establish a classwide duty to disclose.

> **4.** **Because the question of whether Smucker owed a duty to disclose will vary by class member, common questions do not "predominate" as Rule 23(b)(3) requires.**

As the preceding three sections explain, adjudicating the existence of a duty to disclose cannot be done classwide. The Rule 23(b)(3) predominance question "trains on the legal and factual questions that qualify each class member's case." *Van v. LLR, Inc.*, 61 F.4th 1053, 1065 (9th Cir. 2023) (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). As such, variances in how the law applies across the class can raise individualized questions just as severe—or worse—than individualized fact questions. *Id.* ("The Supreme Court has specifically noted that varying applicability of state law defenses can defeat predominance."); *Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 487 (C.D. Cal. 2006) (finding that individualized issues predominated over common ones where "plaintiffs' breach of fiduciary duty claims necessarily require an examination of the in-person representations made to each class member."). That worry is a salient one for cases where a class is founded on an alleged duty owed by the manufacturer to the consumers of its products. *See Martin v. Dahlberg, Inc.*, 156 F.R.D. 207, 217 (N.D. Cal. 1994) ("The question of whether and to what degree defendants owed to plaintiffs a duty of care requires individualized inquiry.").

For all the Ninth Circuit has elaborated on *how* courts should assess "duty to disclose" allegations in omissions cases, it has never answered one key question: What if the alleged risk the company failed to disclose presents itself unevenly or inconsistently across the class? Only one case, *Oddo*, has an answer. In *Oddo*, the class action stemmed from allegations similar to Plaintiffs'—that the defendant knew that a chemical used in its HVAC systems, Ryconox, caused a defect, and that the defendant "knew of this effect but did not disclose it to consumers," who "would not have accepted one of these air conditioners if . . . the presence of this unapproved chemical contaminant" had been disclosed. *Oddo*, 2020 WL 5267917, at *19. The court surveyed California duty-to-disclose law, including *Hodsdon*, in detail. But the record

TUCKER ELLIS LLP

Atlanta ♦ Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ Morristown, NJ ♦ Orange County ♦ San Francisco ♦ St. Louis ♦ Washington, D.C.

showed that the "defect" presented inconsistently across the class, meaning that whether it resulted in a "safety hazard" or affected the "central function" of the HVAC units would vary from class member to class member. *Id.* at *27. The court therefore concluded that "a duty to disclose, pursuant to California law, may exist as to some, but not all, of the proposed class members' HVAC systems." *Id.* Because "individualized inquiries would be necessary to determine whether a duty to disclose exists as to a particular class member's HVAC system," the court held that common issues did *not* predominate over individualized ones, precluding class certification. *Id.*

This case presents the same concerns as *Oddo*. Plaintiffs identify no method for determining whether a duty to disclose exists as to any particular class member. They do not cite *Hodsdon* or any of the relevant California law related to their omissions claims. And the expert who serves as a mouthpiece for Plaintiffs' PFAS migration theory concedes that the extent to which PFAS migration affects the safety or function of any particular putative class member's pet food—if at all—would vary based on a multiple consumer-specific factors. Those variances preclude certification under Rule 23(b)(3).

## IV.    CONCLUSION

This Court should deny Plaintiffs' Motion for Class Certification. Plaintiffs lack both Article III and statutory standing because they did not read or rely on Smucker's packaging. Even if Plaintiffs could clear the standing threshold, they are atypical inadequate class representatives because they are subject to unique causation issues and defenses. Moreover, Plaintiffs' lack any means for establishing a classwide duty to disclose under California law, which means that individualized questions about the presence, migration, and impact of PFAS in packaging will necessarily predominate over those questions common to the class.

DATED: September 17, 2025                    TUCKER ELLIS LLP


By:  */s/ Michael J. Ruttinger*
         Michael J. Ruttinger
         michael.ruttinger@tuckerellis.com

TUCKER ELLIS LLP
Atlanta ◆ Chicago ◆ Cleveland ◆ Columbus ◆ Los Angeles ◆ Morristown, NJ ◆ Orange County ◆ San Francisco ◆ St. Louis ◆ Washington, D.C.